**Joan HASSAN, Dinesh Hassan, Plaintiffs-Appellants,**

v.

**UNITED STATES POSTAL SERVICE, Defendant-Appellee.**

No. 87–3084.

United States Court of Appeals, Eleventh Circuit.

April 11, 1988.

1. W. Shakespeare, Macbeth, Act I, sc. V, 1. 41. Lady Macbeth: "... Come, you spirits that tend on mortal thoughts! unsex me here...."

Alan D. Watson, Yeakle & Watson, P.A., St. Petersburg, Fla., for plaintiffs-appellants.

Dennis I. Moore, Asst. U.S. Atty., Tampa, Fla., U.S. Dept. of Justice, Civil Div., Appellate Staff, Robert S. Greenspan, Scott R. McIntosh, Civil Div., Appellate Staff, U.S. Dept. of Justice, Washington, D.C., for defendant-appellee.

Before FAY and KRAVITCH, Circuit Judges, and ATKINS\*, Senior District Judge.

FAY, Circuit Judge:

In this Federal Torts Claims Act[1] case, the federal district court found that the driver of a government vehicle negligently hit a vehicle driven by appellant Joan Hassan. Neither party challenges this verdict. Hassan, however, argues that she should have received more money in damages. She alleges that the court erred when it (1) considered evidence of collateral source payments that the United States failed to plead as an affirmative defense and then deducted the payments from her award; (2) disallowed damages based on the loss of Hassan's services to her household and to her son; (3) limited her future damages to five years; and (4) computed her damages. We agree that the district court should have allowed Hassan's claim for loss of services, and we reverse on that ground. We affirm the remainder of the district court's order.

---

\* Honorable C. Clyde Atkins, Senior U.S. District Judge for the Southern District of Florida, sitting by designation.

1. 28 U.S.C. §§ 1346, 2671–80 (1982).

*Facts*

On December 12, 1983, a United States Postal Service jeep negligently collided with Hassan's vehicle. Immediately following the accident, Hassan, complaining of pain in her back, went to the hospital. The emergency room doctors prescribed pain and muscle relaxant medication to Hassan and then discharged her.

Hassan's pain, however, did not subside. She continued to experience debilitating agony in her back, neck, and other parts of her body. She consulted a number of physicians over the next three years, in an effort to find a way to successfully treat her problem.

Prior to the car accident, Hassan had a full-time job and led an active life. Following the accident, however, she experienced pain which left her unable to work or engage in any but the least strenuous activities. Hassan became depressed and frustrated due to this forced change in her lifestyle, and sought psychiatric help.

Hassan's doctors found that two of the discs in her lower back had been damaged in the car accident. Most of them recommended conservative forms of treatment. However, in April of 1985, Dr. Thomas Whitecloud, III, the chief of orthopedic surgery at Tulane University Medical School, informed Hassan that through surgery, he could remove the injured discs and fuse the surrounding vertebrae together. In May Dr. Whitecloud successfully performed the operation, which substantially reduced the pain in Hassan's back.

At trial, the district court heard evidence about Hassan's physical and emotional problems, about her operation, and about the likelihood of continued pain and suffering in the future. The court listened to expert testimony about the proper way to assess Hassan's economic damages. In addition, it allowed testimony showing that Hassan received social security and other collateral payments as a result of the accident. Based on all the evidence, the court assessed damages, deducted a portion of those damages due to the collateral payments Hassan had received, and determined that the United States owed Hassan $109,262.[2]

*Issues*

1. *Collateral Sources*

Hassan argues that the trial court improperly considered evidence that she received collateral source payments. According to Hassan, the government's attempt to reduce its liability in this manner constituted an affirmative defense and, consequently, should have been raised in the pleadings. *See* Fed.R.Civ.P. 8(c). By failing to set forth the affirmative defenses, Hassan states, the government waived its right to raise the issue at trial.[3]

---

**2.** The district court assessed damages as follows:

| | | |
|---|---|---|
| 1. | Lost past earnings ($21,501) reduced by the collateral source of social security payments ($9,666) | $ 11,835 |
| 2. | Future wages for the next five years, reduced to present value | 38,196 |
| 3. | Past medical bills ($33,231) reduced by collateral source payments (approximately $30,000) | 3,231 |
| 4. | Damages to the car (covered by insurance, except for the $200 deductible) | 200 |
| 5. | Future medical expenses | |
| | (a) Visits to an internist and to an orthopaedic physician for two years | 500 |
| | (b) Psychotherapy for the next two years, plus | |
| | group therapy for three additional years | $ 6,300 |
| | (c) Medication for the next five years | 9,000 |
| 6. | Pain, suffering, and mental anguish for a total of eight years | 40,000 |
| | TOTAL DAMAGES | $109,262 |

**3.** If the evidence was properly before the court, then the court's action in reducing her award was proper. Courts assess damages under the Federal Torts Claims Act pursuant to the law of the state of injury—except to the extent that the state permits punitive damages. *See Harden v. United States,* 688 F.2d 1025, 1028–29 (5th Cir. Unit B 1982). Section 627.7372 of the Florida Insurance Code, 37 Fla.Stat. § 627.7372 (1984), provides:

(1) In any action for personal injury or wrongful death arising out of the ownership, operation, use, or maintenance of a motor vehicle, the court shall admit into evidence

■ We initially find that the government's argument regarding collateral source payments was an affirmative defense. An affirmative defense has been described as "[a]ny matter that does not tend to controvert the opposing party's prima facie case as determined by the applicable substantive law." 2A J. Moore, Moore's Federal Practice ¶ 8.27[3] (2d ed. 1985). In determining whether a particular argument is an affirmative defense, courts consider "the logical relationship between the defense and the cause of action," and the likelihood that the plaintiff will be unfairly surprised if the defense does not appear in the pleadings. *Ingraham v. United States*, 808 F.2d 1075, 1079 (5th Cir.1987). In the instant case, the government argued that its liability should be reduced by the amount of social security and insurance payments Hassan received. This introduced an issue not directly related to its liability in the automobile accident—the real subject of the litigation. Evidence about the collateral source payments is distinct from evidence about the accident and evidence about the physical and emotional damage borne by Hassan. Therefore, we conclude that the collateral source payments argument falls within the scope of Rule 8(c), and that the government erred in not including this issue in the pleadings as an affirmative defense.

■ Nonetheless, we do not find that the district court improperly considered the evidence on collateral source payments. Admittedly, the general rule is that, when a party fails to raise an affirmative defense in the pleadings, that party waives its right to raise the issue at trial. *See American National Bank v. Federal Deposit Insurance Corp.*, 710 F.2d 1528, 1537 (11th Cir. 1983). However, the liberal pleading rules established by the Federal Rules of Civil Procedure apply to the pleading of affirmative defenses. We must avoid hypertechnicality in pleading requirements and focus, instead, on enforcing the actual purpose of the rule.

■ The purpose of Rule 8(c) is simply to guarantee that the opposing party has notice of any additional issue that may be raised at trial so that he or she is prepared to properly litigate it. *Blonder-Tongue Laboratories, Inc. v. University of Illinois Foundation*, 402 U.S. 313, 350, 91 S.Ct. 1434, 1453, 28 L.Ed.2d 788 (1971). When a plaintiff has notice that an affirmative defense will be raised at trial, the defendant's failure to comply with Rule 8(c) does not cause the plaintiff any prejudice. And, when the failure to raise an affirmative defense does not prejudice the plaintiff, it is not error for the trial court to hear evidence on the issue. *See Bull's Corner Restaurant v. Director of the Federal Emergency Management Agency*, 759 F.2d 500, 502 (5th Cir.1985); *see also Jones v. Miles*, 656 F.2d 103, 107 n. 7 (5th Cir. Unit B 1981)[4] ("Failure to affirmatively plead the defense is simply noncompliance with a technicality and does not constitute a waiver where there is no claim of surprise.") (dicta) (citation omitted).

■ In the case before us, it is clear that there was no prejudice to Hassan. Long before the trial, the government deposed Hassan and questioned her extensively about the collateral source payments she received. In addition, the government asked about collateral source payments in an earlier interrogatory. Thus, Hassan had notice that the government planned to raise the issue at trial. Consequently, we

the total amount of all collateral sources paid to the claimant, and the court shall ... deduct from its verdict the value of all benefits received by the claimant from any collateral source.
(2) For purposes of this section, "collateral sources" means any payments made to the claimant, or on his behalf, by or pursuant to
   (a) The United States Social Security Disability Act ...

   (b) ... [A]utomobile accident insurance that provides health benefits or income disability coverage....
(footnote omitted). The social security payments and automobile insurance payments that Hassan received are clearly within the purview of the statute.

4. Decisions of Unit B of the former Fifth Circuit are binding precedent in this circuit. *Stein v. Reynolds Securities, Inc.*, 667 F.2d 33, 34 (11th Cir.1982).

cannot say that the government's argument unfairly surprised or prejudiced the plaintiff.

### 2. Loss of Services

■ Due to her injuries, Hassan has been unable to perform housework or care for her son. After her injury, her husband and sister-in-law began gratuitously performing these services. Although Hassan has suffered no economic loss, she argued that the services have value and that, therefore, she should receive damages.

The district court determined that Hassan was attempting to bring an action that properly belonged to her husband—as a claim for loss of consortium.[5] The court found that since Hassan has incurred no costs and owes no money to her husband or her sister-in-law, she has not suffered any compensable damages based on loss of services. We reverse, and hold that plaintiffs in Hassan's position have a claim for services received whether those services are provided gratuitously or for a price.

We find it instructive to evaluate this issue in light of the policy underlying Florida's treatment of claims for loss of consortium.[6] Florida has consistently recognized the value of services gratuitously performed by family members of the injured party. See, e.g., White Construction Co., Inc. v. Dupont, 430 So.2d 915, 917–19 (Fla. 1st DCA 1983), reversed on other grounds, 455 So.2d 1026 (Fla.1984); Rumsey v. Manning, 335 So.2d 25, 26 (Fla. 2d DCA 1976).

When Florida courts have denied or limited damages for loss of services, it has been because of their concern with avoiding double recovery. When there is no danger of double recovery, the state awards damages for loss of services. See White, 430 So.2d at 917–18; Rumsey, 335 So.2d at 27. We therefore find that it is more consistent with Florida policy to allow Hassan to bring this claim.

We also believe that, in this instance, an award for loss of services is more consistent with the economic analysis that the district court has utilized. See discussion infra § 4. Hassan worked only seven months of the previous year and part time in other years. This was at least partly due to her responsibilities in caring for her child and performing housekeeping chores.[7] Hassan's earning capacity, as assessed by the district court, is lower than it would have been had she had no child care or housekeeping responsibilities. In not allowing Hassan's claim for loss of services, the district court ignored the economic value of those services.

In addition, the district court ignored the fact that, in many respects, our legal system views a marital couple as a single economic unit. Cf. Canakaris v. Canakaris, 382 So.2d 1197, 1203–04 (Fla.1980) (rejecting a community property analysis, but recognizing the importance of valuing both parties' contributions to the marital relationship in dividing property at dissolution). Therefore, because Hassan's spouse

---

**5.** Hassan's husband was unable to bring this action because he failed to raise it in the administrative proceedings.

**6.** Hassan has pointed to cases dealing with loss of consortium claims to show that she has a valid cause of action. We agree with the district court, however, that Hassan's claim is conceptually distinct from a claim for loss of consortium. In a consortium action, the non-injured spouse alleges that he or she has been injured by the loss of the injured spouse's society and services. See Busby v. Winn and Lovett Miami, Inc., 80 So.2d 675, 676 (Fla.1955). The damages stem from the emotional and economic cost of the spouse's injury to the plaintiff. In the present case, on the other hand, Hassan—the injured party—is asking for damages based on the services that her spouse and other family members are performing gratuitously. Thus,

although Hassan's claim involves the same services involved in a loss of consortium action, she is not suing for loss of consortium. In addition, it is not as easy to assess damages in the present case as it is in a consortium action. Hassan has not incurred any actual expenses due to her own inability to perform them. And, Hassan has not alleged that she has lost income because her family performed the services during time they normally would have spent working. But it is clear that the services had a value. Had Hassan been forced to hire someone to perform these services the cost could be claimed. The fact that such were provided without charge does not diminish the claim.

**7.** On remand, the district court will have to determine the actual value and cost of the services.

spent time that had value performing valuable services, the marital unit incurred a real cost. *See* Note, *Unreason in the Law of Damages: The Collateral Source Rule,* 77 Harv.L.Rev. 741, 746–47 (1964) [hereinafter "Note, *Collateral Source Rule*"].

The case to which the government points us, *Florida Physician's Insurance Reciprocal v. Stanley,* 452 So.2d 514 (Fla.1984), is not controlling here. In *Stanley,* the parents of a child allegedly injured at birth through medical malpractice brought suit. At trial, jurors heard evidence about free and low-cost services provided by charitable and governmental agencies and available to the child at little or no cost. The plaintiffs argued that the evidence should have been held inadmissable based on the common-law collateral source rule, which precludes courts from reducing damage awards by the amount of collateral source payments already received by the plaintiff. The Florida Supreme Court, however, determined that

> "the common-law collateral source rule should be limited to those benefits earned in some way by the plaintiff. Governmental or charitable benefits available to all citizens, regardless of wealth or status, should be admissible for the jury to consider in determining the reasonable cost of necessary future care."

*Stanley,* 452 So.2d at 515.

The government cites *Stanley* for the principle that, where "the plaintiff [incurs] no expense, obligation, or liability in obtaining the services for which he [or she] seeks compensation," *id.* at 515, the plaintiff cannot recover damages based on his or her need for those services. On its face, however, *Stanley* deals only with "free or low cost governmental or charitable care available to all persons with that disability." *Id.* at 516. The key concern expressed in *Stanley* is that, if such services are not considered in evaluating damages, the plaintiff will receive an unintentional windfall in an area that is intended to be purely compensatory. *See id.,* 452 So.2d at 515–16.[8]

The situation in which services are performed by a charitable or governmental organization is distinguishable from one in which services are performed by the plaintiff's spouse or by a family member. *See* Note, *Collateral Source Rule,* at 747. In the latter situation, there is no danger that the court will award damages based on the assumption that the plaintiff will have to spend money to pay for the services. Instead, the loss of services award constitutes a recognition that, following the injury, the plaintiff is no longer able to perform certain services that have value and that some compensation is therefore appropriate.[9]

Based on all of the above reasons, we believe that it is more consistent with Florida law to allow Hassan's claim.[10]

### 3. *Future Damages*

■ The district court found that Hassan's disability will last for two more years, with psychological injuries possibly continuing for an additional three years.

---

**8.** In addition, the court in *Stanley* was careful to note:

> This opinion should not be interpreted as limiting a plaintiff suffering from a particular continuing disability to recover only the future cost of the free or low cost governmental or charitable care available to all persons with that disability.... The jury remains free to find that the publicly available services do not meet the plaintiff's future needs. The jury may find private care at higher cost more appropriate in some circumstances, but the jury should consider those future services ... when deciding on the proper award of future damages.

*Stanley,* 452 So.2d at 516.

**9.** In addition, the services in question in a claim such as this one may not always be provided for free. There is no guarantee that Hassan's family will continue to be available or willing to perform these services.

**10.** We note that an award of damages for loss of services is only appropriate in those cases in which the award would not result in a double recovery for the plaintiff. Double recovery would be possible if, for example, the court were to award a plaintiff's spouse damages for loss of consortium based on those same services. Double recovery would also arise if, in evaluating a plaintiff's lost earning capacity, the court valued the services at issue.

The district court thus concluded that within five years Hassan could lead an entirely normal life, and, accordingly, awarded future damages of only five years. Hassan, however, contends that because the evidence presented by both parties shows that she will never completely recover from her injuries, the district court erred in limiting future damages.

In evaluating Hassan's claim, we must recognize that the district court's determination that Hassan's injuries will last for only five additional years constitutes a factual finding.[11] Our job, then, is to determine whether there was sufficient evidence to support the district court's finding. If there *is* enough evidence, then we must affirm. Fed.R.Civ.P. 52(a).

We have found ample evidence to sustain the district court's conclusion. First, Dr. Whitecloud testified that by May of 1986, Hassan had reached her "maximum medical improvement." According to Dr. Whitecloud, Hassan has a permanent physical impairment of twenty percent. This rating, however, is deceptive. Dr. Whitecloud explained that Hassan actually functions normally, but with a twenty-five percent impairment.

Second, the court considered the testimony of other medical experts. One found no physical reason that Hassan could not drive a car or perform housework and no medical problems that would permanently impair her. Another stated that, generally, many of the problems associated with disc injuries subside within four years. In addition, he noted that approximately ninety percent of the people who suffer from ruptured discs get better without undergoing surgery.

Third, Hassan's psychiatrist testified that Hassan's emotional condition had already improved, due to her improved physical condition and her therapy. In response to a question posed by Hassan's counsel, she stated that if Hassan recovered physically, she would probably only need therapy for another three to five years.

It was Hassan's burden to establish that her injury would cause her pain and suffering after the five year period, not to show that she *might* suffer after the five years. Based on the evidence, the district court could conclude that Hassan's physical pain decreased greatly after her operation, and further determine that her physical condition would continue to improve. The district court also had support for its conclusion that after an additional three years Hassan would heal emotionally as well. Within five years, the court found, Hassan would be able to function normally and with minimal, if any, pain. Because we find ample support in the record, we affirm this finding.

### 4. Calculation of Lost Earnings

■ Finally, Hassan urges this court to find that the district court erred in its calculation of lost earnings. The court adopted the method of calculation suggested by the government's economic expert, Dr. G. Hartley Mellish. Dr. Mellish looked at the total dollar amount that Hassan earned in each of several years, but did not consider that she had worked only part time for many of those years and had worked only seven months in the year prior to the accident. Thus, Hassan contends that the figures used do not accurately reflect her lost earning *capacity*.

We find that the district court used an accepted method of economic analysis after hearing competent expert testimony. Although Hassan could have earned more in prior years had she either worked more months or worked full-time, she did not do so. The law does not require the district court to find that in the future Hassan would have worked full-time and for twelve months each year.

Finally, Hassan argues that the district court erroneously failed to consider the FICA payments that Hassan's employer would have made on her behalf in calculating lost earnings. We disagree. Although the government's expert conceded that he

11. The district court had to evaluate the facts before it in light of Florida's law on damages. Under Florida law, the plaintiff bears the burden of establishing damages to a "reasonable certainty." *See R.A. Jones & Sons, Inc. v. Holman,* 470 So.2d 60, 71 (Fla.Dist.Ct.App.1985).

omitted the FICA payments from his analysis, he also pointed out that he did not deduct any amount from his calculation based on future income tax payments. Had the district court considered both the FICA payments and the taxes, it would have awarded Hassan a smaller amount of damages. Thus, Hassan is aided, rather than damaged, by the district court's analysis.

### Conclusion

We affirm the opinion of the district court except on the issue of loss of services. We reverse and remand to the district court on that issue.

AFFIRMED in part; REVERSED in part.