Joseph D. SENN, Sr., et al., Plaintiffs,

v.

CAROLINA EASTERN,
INC., Defendant.

No. Civ.A. 96–D–371–N.

United States District Court,
M.D. Alabama,
Northern Division.

June 14, 2000.

Jon Cole Portis, Beasley, Allen, Crow, Methvin, Portis & Miles, PC, for Plaintiffs.

Richard E. Broughton, Ball, Ball, Matthews & Novak, P.A., Montgomery, AL, Robert S. Lamar, Jr., Lamar, Burgess,

Hale, Miller, Norris & Feldman, P.C., Birmingham, AL, for Defendant.

### MEMORANDUM OPINION
### AND ORDER

DE MENT, District Judge.

Before the court is Defendant's "Renewed Motion For Judgment As A Matter Of Law/Motion For New Trial" (Doc. No. 44), filed October 22, 1997, which the court construes as a Renewed Motion For Judgment As A Matter Of Law Or, In The Alternative, A Motion For New Trial ("Renew. Mot.," "Mot. New Trial," individually, "Motions," collectively).[1] Plaintiffs oppose said Motions. Defendant and Plaintiffs have filed briefs in support of their respective positions. Having conducted the trial in this matter and having studied the Parties' briefs, the applicable law and the record as a whole, the court finds that Defendant's Motions are due to be denied.

### I. BACKGROUND

In 1994, Plaintiffs, who are farmers, planted peanut seeds on approximately 312 acres in Bullock County, Alabama. Defendant is a company that markets agricultural chemicals and services in connection with applying the chemicals to farmers' crops. Defendant sold Plaintiffs Dual and Sonolan and applied these two fertilizers to Plaintiffs' peanut crops in 1994. According to Plaintiffs, Defendant applied excessive rates of Dual and Sonolan, which injured and stunted the growth of a portion of their peanut seeds.

As a result of the damage to their peanut crops, Plaintiffs brought this Complaint, seeking compensatory and punitive damages from Defendant for negligence (Count 1) and wantonness (Count 2). Defendant answered with a general denial, asserted affirmative defenses and filed a counterclaim for breach of contract. In its counterclaim, Defendant alleged that Plaintiff Joseph D. Senn, Sr., purchased "fertilizers and chemicals" valued in excess of $12,000 and "failed and refused to make payment on said account." (Doc. Nos.3, 23, 38.)

The trial commenced on October 6, 1997, and concluded on October 8, 1997. On Plaintiffs' claims for negligence and wantonness, the jury returned a verdict in favor of Plaintiffs awarding $297,600 in compensatory damages and $250,000 in punitive damages. On Defendant's counterclaim, the jury returned a verdict in favor of Plaintiff Joseph D. Senn, Sr.

At the close of Plaintiffs' case and again at the close of all the evidence, Defendant moved for judgment as a matter of law on Plaintiffs' negligence and wantonness claims and also on its counterclaim. Pursuant to Rule 50(b) of the Federal Rules of Civil Procedure, Defendant now renews its motions for judgment as a matter of law or, alternatively, moves for a new trial. *See* FED.R.CIV.P. 50(b); *see also* FED. R.CIV.P. 59.

### II. DISCUSSION

*A. Defendant's Renewed Motion For Judgment As A Matter Of Law Or, In The Alternative, Motion For New Trial On Plaintiffs' Negligence And Wantonness Claims*

In support of its Renewed Motion on Plaintiffs' negligence and wantonness claims, Defendant raises six grounds. (Doc. Nos.44, 48.) Having carefully considered each of Defendant's grounds and construing the evidence and factual inferences in the light most favorable to Plaintiffs, the court finds that a "legally sufficient evidentiary basis" exists to support the jury's verdict in favor of Plaintiffs on their claims for negligence and wantonness. FED.R.CIV.P. 50(a); *see also Mendoza v. Borden, Inc.,* 195 F.3d 1238, 1244 (11th Cir.1999); *Carter v. DecisionOne Corp.,* 122 F.3d 997, 1003–04 (11th Cir.

---

1. When citing to certain pleadings in the record, the court refers to the docket numbers assigned to those pleadings ("Doc.No.").

1997). In other words, there is "evidence of such quality and weight that reasonable and fair-minded men [and women] in the exercise of impartial judgment might reach different conclusions." *Boeing Co. v. Shipman,* 411 F.2d 365, 374–75 (5th Cir. 1969).[2] Thus, the court finds that Defendant's Renewed Motion on Plaintiffs' claims for negligence and wantonness is due to be denied.

After careful consideration of the evidence presented at trial, the court finds it necessary to elaborate upon only one of Defendant's six grounds. Because at trial the court did not have the explicit guidance of *Kumho Tire Co., Ltd. v. Carmichael,* 526 U.S. 137, 119 S.Ct. 1167, 143 L.Ed.2d 238 (1999), the court shall address Defendant's attack upon the expert testimony offered by Plaintiffs on the issue of causation. Defendant argues that Plaintiffs failed to prove causation because the expert testimony upon which Plaintiffs relied was unreliable and, therefore, inadmissible under Rule 702[3] of the Federal Rules of Evidence as elucidated by *Daubert v. Merrell Dow Pharmaceuticals, Inc.,* 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993), and *Kumho, supra.* To prove causation, Plaintiffs presented, and the court accepted, John Beasley ("Beasley"), Ph.D., "as an expert witness in the discipline of crop and soil science" with a speciality in peanut agronomy. (Tr. at 139.[4])

Defendant does not question Beasley's extensive credentials and qualifications. (Tr. at 126–137, 149–50; Doc. No. 48 at 13.) Rather, Defendant's attack is upon the methodology employed by Beasley in concluding that the cause of damage to Plaintiffs' peanut crops was "more likely than not" due to an "excessive rate[ ]" of "Dual and/or Sonolan" applied to Plaintiffs'

crops. (Tr. at 164, 179; *see also* Tr. at 150–51, 153–54, 168–70, 176–79, 220–21, 234–36.) Defendant contends that Beasley's "method of reaching his conclusions has not been tested, has not been approved by his peers, [and] has never been used before to prove herbicide poisoning of peanuts...." (Doc. No. 48 at 12–13.) According to Defendant, "there was insufficient admissible evidence available to support anything more than speculation and guesswork on Dr. Beasley's part that Dual poisoning was a possible cause of some damage to [ ][P]laintiffs' peanut crops." (*Id.* at 13.) For the reasons stated herein, the court disagrees.

■ In *Daubert,* the Supreme Court of the United States set forth a non-exhaustive list of factors a court should consider when deciding upon the admissibility of scientific expert testimony. Under the *Daubert* test, the court, in a "gate-keeping" capacity, assesses the reliability of expert testimony by considering, among other factors, the following: 1) whether the expert's theory or technique can be, and has been, tested; 2) whether the theory or technique has been subjected to peer review and publication; 3) the known or potential rate of error; and 4) whether the theory has been generally accepted in the scientific community. *See Daubert,* 509 U.S. at 591–93, 113 S.Ct. 2786. In considering these factors, "[t]he focus ... must be solely on principles and methodology, not on the conclusions they generate." *Id.* at 595, 113 S.Ct. 2786.

Thereafter, in *Kumho,* decided after the verdict in this case, the Supreme Court held that "*Daubert*'s general holding—setting forth the trial judge's general 'gatekeeping' obligation—applies not only to tes-

---

**2.** In *Bonner v. City of Prichard,* the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit issued prior to October 1, 1981. *See* 661 F.2d 1206, 1209 (11th Cir.1981) (en banc).

**3.** Rule 702 provides that, "[i]f scientific, technical, or other specialized knowledge will assist the trier of fact to understand the

evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise." FED.R.EVID. 702.

**4.** The court refers to the trial transcript as "Tr."

timony based on 'scientific' knowledge, but also to testimony based on 'technical' and 'other specialized' knowledge." 526 U.S. at 141, 119 S.Ct. 1167 (quoting FED.R.EVID. 702). Thus, even where an expert witness posits an experience-based opinion, as opposed to a purely scientific opinion, "a trial court may consider one or more of the more specific factors that *Daubert* mentioned when doing so will help determine that testimony's reliability." *Id.* Moreover, the *Kumho* Court emphasized, as did the *Daubert* Court, that the test of reliability is " 'flexible,' " and that *"Daubert*'s list of specific factors neither necessarily nor exclusively applies to all experts or in every case." *Id.; see also Daubert,* 509 U.S. at 594, 113 S.Ct. 2786.

Here, at trial, the court concluded that the *Daubert* factors applied in determining the reliability and, thus, the admissibility of Beasley's proposed expert testimony. The court found that the *Daubert* factors were applicable even though Beasley's methodology underlying his opinion was not based upon a scientific test, but, rather, primarily upon his experience and knowledge of the effects of over-application of Dual and/or Sonolan.[5] The court carefully considered Beasley's answers to the specific *Daubert* inquiries, as elicited both by counsel for Plaintiffs and by the court. (Tr. at 141–48, 163–170.) Based on Beasley's responses, the court found that the *Daubert* test was "satisfied" and that Beasley's conclusions were based upon a reliable methodology. (Tr. at 172.)

■ After reviewing the trial transcript, the arguments of Defendant and the applicable law, the court concludes that its trial findings comport with the law. While the court need not rehash its findings made at trial, the court underscores that its determination that Beasley's testimony meets the reliability factor is based upon a flexible application of the *Daubert* holding. Specifically, the court emphasizes the following. First, at least some of the specific *Daubert* factors apply and weigh in favor of the admissibility of Beasley's testimony. For example, Beasley's methodology has been "tested" and subject to peer review at least to the extent that "weed" scientists have authored "publications" and compiled "data" documenting the damage to crops caused by an over-application of Dual and/or Sonolan. (Tr. at 164, 168, 220.) Furthermore, in discussing the "rate of error," Beasley explained that "it's a very high probability that, the majority of the time" when the herbicides at issue are over-applied, the affected crops will exhibit the same type of symptoms as manifested in Plaintiffs' peanut crops. (Tr. at 167–68.)

Second, even if all of the specific *Daubert* factors are not satisfied and/or applicable, the court finds that Beasley's methodology meets the *Daubert/Kumho* standard of reliability. Specifically, the court finds that Beasley's extensive background and experience in analyzing and ascertaining the causes of crop damage, coupled with his review of relevant publications and his work with other "weed" scientists, provides an adequate basis upon which Beasley can offer his opinion. Thus, keeping in mind that the inquiry under Rule 702 is a flexible one, the court finds that Beasley's conclusions regarding the cause of damage to Plaintiffs' peanut crops meet the minimum standard

---

5. In response to questions about the "methodology or technique" Beasley employed in forming his opinion, Beasley stated that his methodology was experienced-based, more specifically, that he relied upon the following: (1) his first-hand experience in observing "field problems" (Tr. at 144); (2) the fact that he has "assisted in work with previous weed science researchers looking at . . . potential problems related to excessive rates of herbicides" (Tr. at 147); (3) his "many years in the field and seeing specific tests put out in the field, looking at what these herbicides, particularly the Dual can do, when excessive rates of the Dual are applied" (Tr. at 164, 238); (4) "the fact that [he] has helped put out field tests and helped examine the plants and [has] seen plants that were damaged by . . . excessive rates of particularly the Dual" and that, "when the soil has been analyzed . . .—it was ascertained that it was a high concentration of the chemical herbicide that caused that damage." (Tr. at 166–67.)

of reliability under Rule 702, as elaborated upon in *Daubert* and *Kumho*.

■ Third, the court finds that Beasley had sufficient facts in this case upon which to form a reliable opinion. To explain, Beasley rendered his opinion based upon facts provided to him about the condition of Plaintiffs' peanut crops.[6] (Tr. at 140, 141, 164–66.) Beasley testified that, based on the timing within the growing season that the damage occurred, he "had enough facts" about the damage to Plaintiffs' peanut crops to form his opinion. (Tr. at 152–53, 166.) The court is not persuaded by Defendant's arguments challenging Beasley's latter statement. For instance, Defendant argues that, because Beasley did not view photographs of all of Plaintiffs' peanut crops, Beasley cannot form an opinion as to any alleged damage to peanut crops not depicted in the photographs. The court disagrees. Beasley testified that, in assessing the facts provided to him, he could render an opinion without viewing any photographs. (Tr. at 220.) To the extent that Defendant impeached Beasley on this point, the court finds that the impeachment goes to the weight of Beasley's testimony, not its admissibility, *see infra.*

■ Fourth, the court has carefully considered all of Defendant's arguments addressing the alleged shortcomings of Beasley's testimony, such as the fact that no scientific tests were performed on Plaintiffs' soil. (Tr. at 185–86, 214–15.) However, the court finds, as it did at trial (Tr. at 170, 172), that Defendant's arguments go to the weight, rather than to the admissibility, of Beasley's testimony. *See Daubert,* 509 U.S. at 596, 113 S.Ct. 2786 ("Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional

and appropriate means of attacking shaky but admissible evidence."); *see also Ruiz–Troche v. Pepsi Cola of Puerto Rico Bottling Co.,* 161 F.3d 77, 85 (1st Cir.1998) ("*Daubert* does not require that a party who proffers expert testimony carry the burden of proving to the judge that the expert's assessment of the situation is correct." Where the expert testimony "rest[s] upon 'good grounds, based on what is known, it should be tested by the adversary process-competing expert testimony and active cross-examination-rather than excluded from jurors' scrutiny for fear that they will not grasp its complexities or satisfactorily weigh its inadequacies.").

In sum, considering the principles espoused in *Daubert* and *Kumho* and the record as a whole, and construing doubt in favor of Plaintiffs, the court finds that Beasley could reliably opine the "more likely" cause of Plaintiffs' crop damage. In finding no error in the admission of Beasley's expert testimony, the court concludes that Defendant's Renewed Motion on this ground is due to be denied.

Now, the court turns to Defendant's Motion For New Trial on Plaintiffs' claims for negligence and wantonness. Defendant re-asserts the six grounds raised in support of its Renewed Motion and raises nineteen additional issues.[7] (Doc. No. 44.) After careful consideration of Defendant's arguments, the applicable law and the record as a whole, the court finds that the jury's verdict is not contrary to the "great weight" of the evidence, that the trial record contains no prejudicial errors of law, and that the jury award is not excessive. *See Redd v. City of Phenix City,* 934 F.2d 1211, 1215 (11th Cir.1991); *see also Rosenfield v. Wellington Leisure Prods., Inc.,* 827 F.2d 1493, 1497–98 (11th Cir.1987);

---

6. Neither Party disputes that experts may testify to opinions not based on first-hand knowledge and observation. *See* FED.R.EVID 703; *see also Daubert,* 509 U.S. at 592, 113 S.Ct. 2786.

7. In its pleading filed August 4, 1998, Defendant "requests" the court to allow it "to submit a brief and argument, including oral arguments" in support of its alternative Motion For New Trial. (Doc. No. 48 at 1, n. 1) The court has carefully examined each of Defendant's grounds raised in support of its Motion For New Trial and finds that further briefing is unnecessary.

*Hall v. Norfolk Southern Ry. Co.*, 829 F.Supp. 1571, 1579 (N.D.Ga.1993); Fed. R.Civ.P. 59(a) (giving the trial court discretion to grant a new trial "for any of the reasons for which new trials have heretofore been granted in actions at law in the courts of the United States"). Accordingly, the court finds that Defendant's Motion For New Trial on Plaintiffs' negligence and wantonness claims is due to be denied.

B. *Defendant's Renewed Motion For Judgment As A Matter Of Law Or, In The Alternative, Motion For New Trial On Defendant's Counterclaim*

Defendant, as the counterclaim Plaintiff, asserts that it is entitled to judgment as a matter of law on its breach-of-contract claim or, in the alternative, to a new trial. As grounds for its Renewed Motion, Defendant contends as follows: Plaintiff Joseph D. Senn, Sr., as the counterclaim Defendant, "raised as a defense for the first time at trial" that he was " 'justified' in refusing to pay the amount due.... However, this justification defense is an affirmative defense that must be specifically pleaded" under Rule 8(c) of the Federal Rules of Civil Procedure but "was not so pleaded." (Doc. No. 44 at 11.) Further, in support of its Motion For New Trial on its counterclaim, Defendant argues that the court "committed reversible error" in charging the jury on said defense. *(Id.; see also* Tr. at 446.) For the reasons that follow, the court disagrees with Defendant that the grounds asserted warrant the relief sought.

█ A failure to raise an affirmative defense by pleading does not always result in a waiver. "Admittedly, the general rule is that, when a party fails to raise an affirmative defense in the pleadings, that party waives its right to raise the issue at trial." *Hassan v. United States Postal Serv.*, 842 F.2d 260, 263 (11th Cir.1988). However, "the liberal pleading rules established by the Federal Rules of Civil Procedure apply to the pleading of affirmative defenses. [The court] must avoid hypertechnicality in pleading requirements and focus, instead, on enforcing the actual purpose of the rule." *Id.* As explained in *Hassan,*

[t]he purpose of Rule 8(c) is simply to guarantee that the opposing party has notice of any additional issue that may be raised at trial so that he or she is prepared to properly litigate it. When a plaintiff has notice that an affirmative defense will be raised at trial, the defendant's failure to comply with Rule 8(c) does not cause the plaintiff any prejudice. And, when the failure to raise an affirmative defense does not prejudice the plaintiff, it is not error for the trial court to hear evidence on the issue.

*Id.* (internal citations omitted).

█ Here, Plaintiffs filed their proposed jury instructions on September 26, 1997, ten days prior to the trial of this case. Therein, Plaintiffs requested a charge to the jury that Plaintiff Joseph D. Senn, Sr., was justifiably excused from performing the contract at issue. (Doc. No. 27 at 21, citing APJI 10.25.) Based on Plaintiffs' requested charge, the court finds that, in advance of trial, Defendant was aware, or at least should have been aware, that Plaintiff Joseph D. Senn, Sr., intended to rely on this defense. Yet, at no time—i.e., either prior to trial, during trial or in its post-trial pleadings—has Defendant asserted that it suffered prejudice or unfair surprise from Plaintiffs' late notice of the breach-of-contract defense. Moreover, at no time prior to trial did Defendant file an objection, motion in limine or other pleading asking the court to exclude evidence of the aforementioned defense or otherwise cure the resulting prejudice, if any. In fact, the first time Defendant raised its objection to said proposed defense was *after* Defendant rested its case, just prior to the court charging the jury. (Tr. at 423.[8])

---

**8.** "We object to the giving of the charge ... dealing with a justified reason for nonperformance of a contract by [Plaintiff Joseph D. Senn, Sr.] because we don't think there's sufficient evidence to justify that charge. *And it's an affirmative defense that wasn't pled."* (Tr. at 423 (emphasis added).)

Based on the foregoing, the court finds that Defendant had sufficient notice in advance of trial that Plaintiff Joseph D. Senn, Sr., intended to raise at trial an affirmative defense to Defendant's breach-of-contract counterclaim. The court further finds that Defendant cannot claim unfair surprise or prejudice from the failure of Plaintiff Joseph D. Senn to affirmatively plead said defense. Likewise, the court finds that it did not commit error in its charge to the jury on said affirmative defense. Thus, applying the standards governing motions for judgment as a matter law and motions for new trial, discussed *supra*, the court finds that Defendant's Motions as to its counterclaim are due to be denied.

### III. ORDER

Based on the foregoing, it is CONSIDERED and ORDERED that Defendant's Renewed Motion For Judgment As A Matter Of Law, Or, In The Alternative, Motion For New Trial (Doc. No. 44) be and the same is hereby DENIED.