# Illinois Official Reports

## Appellate Court

---

*Segovia v. Romero*, 2014 IL App (1st) 122392

---

| | |
|---|---|
| Appellate Court Caption | SYLVIA SEGOVIA, Plaintiff-Appellee, v. HECTOR ROMERO, Defendant-Appellant (The City of Chicago Medical Care Plan for Employees, Intervenor). |
| District & No. | First District, Fifth Division<br>Docket No. 1-12-2392 |
| Filed | March 28, 2014 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | In an action arising from an automobile accident in which defendant crashed into the rear of plaintiff's car and the insurer of plaintiff's husband paid under its policy and then filed a subrogation action against defendant, which was settled for defendant's payment of an amount that included $2,500 to release the $5,000 claim for plaintiff's medical bills, the trial court, in plaintiff's subsequent action against defendant to recover for her losses, erred in denying defendant's counterclaim seeking a setoff for plaintiff's $5,000 claim for medical bills based on the earlier settlement of that claim for $2,500 in the subrogation action, notwithstanding the collateral source rule, since plaintiff's medical bills of $5,000 were settled for $2,500 in the subrogation action brought by her husband's insurer, and without a setoff, defendant, through his insurer, would have to pay twice for the same medical expenses. |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 11-M1-301010; the Hon. Diane Shelley, Judge, presiding. |
| Judgment | Reversed and remanded. |

Counsel on
Appeal

Shelist Law Firm, LLC, of Chicago (Samuel A. Shelist, of counsel), for appellant.

Larry L. Fleischer & Associates, Ltd., of Chicago (Richard O. Krumbacher, of counsel), for appellee.

Panel

JUSTICE PALMER delivered the judgment of the court, with opinion.
Justices McBride and Taylor concurred in the judgment and opinion.


## OPINION

¶ 1  Defendant Hector Romero argues on appeal that the circuit court of Cook County erred in denying his motion for a setoff from the jury verdict in favor of plaintiff Sylvia Segovia. We reverse and remand.

¶ 2                              BACKGROUND

¶ 3  In September 2009, defendant drove into the rear of plaintiff's car, causing injuries to plaintiff and damage to her car. Plaintiff's husband, Rodolfo Segovia, Sr. (Segovia), had an insurance policy with State Farm Mutual Automobile Insurance Company (State Farm). State Farm paid Segovia for damages under the policy.

¶ 4  State Farm filed a subrogation action against defendant in municipal court, State Farm Automobile Insurance Co. v. Romero, No. 10 M1 012952 (Cir. Ct. Cook Co.). It asserted that Segovia was the owner and/or driver of the car damaged by defendant in the collision and, as a result of defendant's negligence, he suffered personal injuries and pain and suffering, lost wages and incurred medical and car repair expenses for which he was covered under the policy. State Farm claimed that it had paid on Segovia's behalf "various monies for [his] damages, losses and expenses and [Segovia] incurred a deductible, totaling the sum of $10,766.20." It stated that, pursuant to the policy, Segovia had assigned it all of his claims and demands against any party for his damage, loss or expenses. State Farm argued that it was now the "bona fide subrogee to the amounts" it had paid on Segovia's behalf and requested the court to award it a judgment of $10,766.20 plus costs against defendant.

¶ 5  The case was set for arbitration. State Farm filed a statement pursuant to Illinois Supreme Court Rule 90 (eff. July 1, 2008) and supporting documents showing it had paid "healthcare provider bills" totaling $5,000. It itemized these payments as $3,711 paid to Lutheran General Hospital, $564 paid to Advanced Radiology and $725 paid to AMG-AHHC. State Farm's Rule 90 statement also showed that it had paid $5,516 for "property damage" and $250 for "deductible." Its total payments were $10,766.

¶ 6  Defendant had an insurance policy with American Heartland Insurance Company (American Heartland). American Heartland paid State Farm $5,383.10 to settle the subrogation action. In April 2011, State Farm "as Subrogee of [Segovia]," signed a release of

all its subrogation claims arising or resulting from the September 2009 accident. It voluntarily dismissed its subrogation action.

¶ 7 In April 2011, plaintiff filed an action in the circuit court of Cook County municipal division, first district, against defendant. She sought "in excess of $50,000" for her medical, surgical and nursing care costs, lost wages and pain and disability. In her disclosure statement, plaintiff listed her economic damages as $4,560 incurred at Advocate Lutheran General Hospital but stated "investigation continues."

¶ 8 In June 2011, defendant answered plaintiff and filed affirmative defenses and a counterclaim for setoff. In the counterclaim, he requested that, in the event a judgment was entered against him on plaintiff's claim, the court order a $5,000 setoff against any judgment in favor of plaintiff. Defendant claimed that State Farm had sought reimbursement for $5,000 in medical payments it had made on behalf of plaintiff, its insured, and the subrogation action arose from the same incident and involved the same parties as plaintiff's personal injury action. He asserted that he had settled the subrogation action with State Farm and, in doing so, had settled the "medpay portion" of the subrogation action for $2,500, 50% of the requested $5,000 amount.

¶ 9 Defendant claimed that the $5,000 sought by State Farm was for the identical medical expenses sought by plaintiff and his settlement of the "medpay portion" of the subrogation action, therefore, extinguished plaintiff's claim against him for $5,000 worth of her medical expenses. Defendant attached to his counterclaim a copy of a May 5, 2011, check for $5,383 from American Heartland to "STATE FARM A/S/O RODOLFO SEGOVIA SR AND THEIR ATTY STEVEN D. GERTLER ALL CLAIMS CASE #10M1012952." The check itemized $2,500 for "liability/bodily injury" and $2,883 for "liability/property damage."

¶ 10 Plaintiff's case initially went to mandatory arbitration. In December 2011, the arbitrator found for plaintiff, awarding her $12,000 in damages. Defendant rejected the award. The case was then set for a jury trial.

¶ 11 In a March 8, 2012, "intake and SCR 218 case management order," plaintiff itemized her medical expenses as: $4,547 to Lutheran General Hospital, $725 to Advocate Health and $110 to Dr. Timothy Hain, for a total of $5,382. She moved to strike the setoff counterclaim or, in the alternative, for a stay of the counterclaim until after trial.

¶ 12 On May 2, 2012, the jury found for plaintiff. Its itemized verdict form shows it awarded plaintiff $5,395 in damages for "the reasonable expense of necessary medical care, treatment and services rendered." It awarded "$0" for "loss of normal life" and "pain and suffering." The court set a hearing on defendant's setoff counterclaim.[1]

---

[1]The court also granted the City of Chicago Medical Care Plan for Employees (the Plan) leave to intervene. The Plan had asserted that it had standing to intervene because plaintiff had health insurance coverage under the Plan, the Plan had paid $25,546.33 in medical benefits on plaintiff's behalf as a result of the September 2009 accident and it had subrogation rights in regard to any settlement, judgment or recovery by plaintiff relating to the accident. It asserted a lien on all claims plaintiff might have arising from the accident to the extent of the benefits it had paid on her behalf. The court subsequently awarded the Plan "its medical lien amount of $2,621.32." This award is not at issue on appeal.

¶ 13 In an undated affidavit, an attorney for State Farm averred that State Farm had pursued its subrogation claim against defendant for "claim amounts paid to or on behalf of its insured [plaintiff]" arising from the September 2009 accident.[2] He asserted that State Farm had filed suit seeking $10,766.20 in damages, comprised of $5,766.20 in property damage and $5,000 in "medical payments made on behalf of [plaintiff]." Counsel stated that, in exchange for $5,383.10, State Farm's interests in the claim were satisfied and it had "released all property damage or medical payment subrogation claims it [had] related to [the] action." He stated that the suit had been settled and the case was dismissed on May 3, 2011.

¶ 14 On July 13, 2012, the court denied defendant's counterclaim for setoff. The court first pointed out that State Farm's subrogation action pertained to plaintiff's husband, Segovia, only and that plaintiff had been a party to neither the subrogation action nor the resulting settlement in which State Farm, "as subrogee of the Husband," released defendant from all claims and losses arising from the accident. The court stated:

> "It is arguable that the jury awarded money to compensate the Wife for the exact same medical expenses allegedly paid to her husband by a collateral source, State Farm. However, there is no contractual, statutory, or common law obligation on the part of the Wife to repay this money to [defendant]. Allowing the plaintiff to keep this money as well as the benefit of the money previously paid by the insurer may result in a double or windfall recovery. But it is the position of the law that a benefit that is directed to the injured party should not be shifted so as to become a windfall for the tortfeasor. If the plaintiff was herself responsible for the benefit by having her husband maintain insurance the law allows her to keep it for herself. If the payment was a gift from her husband, she cannot be deprived of it, so long as the payment did not come from the Defendant or a person acting for him. It came from State Farm. Romero has no right against the Plaintiff for recoupment through subrogation, lien, setoff, or otherwise."

¶ 15 The court "recognize[d] that there is a slight twist in the facts of this case because of State Farm's subrogation action." It noted:

> "However, that action pertained to the Husband only. Hindsight poses the question of whether or not the Wife should have been made part of the release. However, it is not the role of this court to go beyond the plain wording of the release and settlement which makes no mention of the Wife's claim."

The court found this underscored by the fact that defendant personally had no right or claim for setoff under any theory of law, noting that, "[i]f such a claim existed[,] it would have to be asserted by his insurer [American Heartland] and not by him. [American Heartland] is not a party to this action." It also found "[t]here is no contractual or otherwise relationship between the Wife and [American Heartland]."

¶ 16 Defendant filed a timely notice of appeal on August 13, 2012.

---

[2]The record does not show how the affidavit came to be admitted or which party submitted it. Plaintiff asserts that defendant filed the affidavit in support of his counterclaim for setoff but we cannot verify this. Nevertheless, given that both parties refer to the affidavit and neither challenges its admissibility, we will presume that the court properly admitted it into evidence.

¶ 17                                                      ANALYSIS

¶ 18        Defendant argues the circuit court erred in denying his motion for setoff. He states that "Illinois has a public policy of limiting a plaintiff to one recovery for a single injury, and this is the purpose of seeking a setoff by defendant." He asserts that there is no dispute that the jury awarded plaintiff a verdict for the exact same bills from Lutheran General Hospital that State Farm had already paid on plaintiff's behalf and for which State Farm had brought and settled the subrogation action against defendant. As defendant correctly points out, *all* claims for medical expenses incurred as a result of the accident were released in the settlement of the subrogation action. He argues it is the "essence of unfairness" that he might have a money judgment entered against him for the exact same bills and damages that he had already paid to State Farm "on behalf of" plaintiff.[3] We review *de novo* the question of whether a defendant is entitled to setoff. *Thornton v. Garcini*, 237 Ill. 2d 100, 115-16 (2009). We find defendant is entitled to a $5,000 setoff for the amount of medpay benefits claimed by State Farm that was settled for $2,500 in the subrogation action.

¶ 19        The collateral source rule provides that " ' "benefits received by the injured party from a source wholly independent of, and collateral to, the tortfeasor will not diminish damages otherwise recoverable from the tortfeasor." ' " *Wills v. Foster*, 229 Ill. 2d 393, 399 (2008) (quoting *Arthur v. Catour*, 216 Ill. 2d 72, 78 (2005), quoting *Wilson v. The Hoffman Group, Inc.*, 131 Ill. 2d 308, 320 (1989)).[4] Under the rule, " '[p]ayments made to or benefits conferred on the injured party from other sources are not credited against the tortfeasor's liability, although they cover all or a part of the harm for which the tortfeasor is liable.' " *Wills*, 229 Ill. 2d at 399 (quoting Restatement (Second) of Torts § 920A(2) (1979)). The collateral payments made to or benefits conferred on the plaintiff do not reduce the defendant's liability, even though they reduce a plaintiff's losses. *Wills*, 229 Ill. 2d at 402 (citing *Arthur*, 216 Ill. 2d at 78-79).

---

[3]There is no copy of the State Farm policy in the record by which we can verify this but the parties seem to agree that State Farm considered plaintiff an insured through her husband's policy. Defendant does not address any of the bases for the court's denial of his setoff claim, including whether the collateral source rule applies. He supports his argument that the court erred in denying setoff only with a general citation to *Babikian v. Mruz*, 2011 IL App (1st) 102579. We presume he cites to *Babikian* for the proposition that, "[a]lthough the settlement of claims is to be encouraged, Illinois also has a public policy of limiting a plaintiff to one recovery for a single injury and of protecting the financial interests of nonsettling parties." *Babikian*, 2011 IL App (1st) 102579, ¶ 22. However, *Babikian* concerns the effect of a settlement by one tortfeasor on a nonsettling tortfeasor under the Joint Tortfeasor Contribution Act (740 ILCS 100/2(c) (West 2010)) and is otherwise inapplicable here.

[4]In sections 2-1205 and 2-1205.1 of the Illinois Code of Civil Procedure (735 ILCS 5/2-1205, 2-1205.1 (West 2010)), the legislature created two exceptions to the collateral source rule. *Wills*, 229 Ill. 2d at 400. Neither section applies here. Section 2-1205 applies where the alleged tortfeasor is a "licensed hospital or physician." 735 ILCS 5/2-1205 (West 2010). Defendant is neither. Section 2-1205.1 applies where "the benefits provided for medical charges, hospital charges, or nursing or caretaking charges, which have been paid, or *** become payable" exceed $25,000. 735 ILCS 5/2-1205.1 (West 2010). Defendant asserts plaintiff received approximately $5,300 in medical benefits, well below the $25,000 threshold.

¶ 20      The collateral source rule " ' "bars a defendant from reducing the plaintiff's compensatory award by the amount the plaintiff received from the collateral source" ' " (*Wills*, 229 Ill. 2d at 400 (quoting *Arthur*, 216 Ill. 2d at 80, quoting James M. Fischer, Understanding Remedies § 12(a), at 77 (1999)) and is considered an exception to the general rule that damages in negligence actions must be compensatory (*Wills*, 229 Ill. 2d at 399). "A situation in which the collateral source rule is frequently applied is one in which the injured plaintiff has been partly or wholly indemnified for the loss by proceeds from his accident insurance. In such a situation, the damages recovered by the plaintiff from the tortfeasor are not decreased by the amounts received from insurance proceeds." *Wilson*, 131 Ill. 2d at 320.

> " '[T]he law does not differentiate between the *nature* of the benefits, *so long as they did not come from the defendant or a person acting for him*. One way of stating this conclusion is to say that it is the tortfeasor's responsibility to compensate for all harm that he causes, not confined to the net loss that the injured party receives.' " (Emphasis in original and added.) *Wills*, 229 Ill. 2d at 411 (quoting Restatement (Second) of Torts § 920A(2) cmt. b (1979)).

¶ 21      One of the justifications for the collateral source rule is "that the tortfeasor should not benefit from expenditures made by the injured party in procuring insurance." *Wills*, 229 Ill. 2d at 400. " '[T]he wrongdoer should not benefit from the expenditures made by the injured party or take advantage of contracts or other relations that may exist between the injured party and third persons.' " *Arthur* 216 Ill. 2d at 79 (quoting *Wilson*, 131 Ill. 2d at 320). "Although the rule appears to allow a double recovery, *** typically, the collateral source will have a lien or subrogation right that prevents such double recovery." *Wills*, 229 Ill. 2d at 399.

¶ 22      The collateral source rule has both evidentiary and substantive components. *Wills*, 229 Ill. 2d at 400. As a rule of evidence, " '[t]he rule operates to prevent the jury from learning anything about collateral income,' " such as benefits a plaintiff received from her insurer or expenses paid on her behalf by Medicare or Medicaid. *Id*. at 403 (quoting *Arthur*, 216 Ill. 2d at 78). Relevant here is the damages component of the rule. As a substantive rule of damages, the collateral source rule

> " 'protects collateral payments made to or benefits conferred on the plaintiff *by denying the defendant any corresponding offset or credit*. Such collateral benefits do not reduce the defendant's tort liability, even though they reduce the plaintiff's loss.' " (Emphasis in original.) *Wills*, 229 Ill. 2d at 419 (quoting *Arthur*, 216 Ill. 2d at 78).

¶ 23      Here, plaintiff received the benefit of her husband Segovia's insurance policy with State Farm when State Farm paid for assorted medical and property damage expenses plaintiff incurred as a result of the September 2009 accident. State Farm is not a party to plaintiff's action against defendant. It is a third party and a "source wholly independent of, and collateral to, [defendant] the tortfeasor." Therefore, the collateral source rule would apply to any benefits State Farm conferred on plaintiff. The rule would protect these collateral payments made to or benefits conferred on the plaintiff by State Farm by denying the defendant any corresponding setoff or credit. *Wills*, 229 Ill. 2d at 419. Such collateral benefits would not reduce defendant's tort liability, even though they reduced plaintiff's loss. *Wills*, 229 Ill. 2d at 419.

¶ 24      However, defendant is not seeking setoff for the medical benefits State Farm conferred on plaintiff. Rather, he is seeking setoff for the amount he or, more accurately, his insurer American Heartland, paid State Farm to settle State Farm's subrogation action against him for the benefits State Farm asserted it conferred on plaintiff and/or her husband. Specifically, he is

seeking a $5,000 setoff, which represents the amount of medpay benefits claimed by State Farm that was settled for $2,500 in the subrogation action.

¶ 25   American Heartland is not a collateral source. It is not a "source wholly independent of, and collateral to, [defendant] the tortfeasor." American Heartland is defendant's insurer. It is a source related to defendant through contract, it made the payment to State Farm on defendant's behalf and it will probably have to pay for the final damages awarded against defendant. Without setoff, defendant, through his insurer, will have to pay twice for the same medical expenses.

¶ 26   Our supreme court has held: " '[t]he law does not differentiate between the *nature* of the benefits, *so long as they did not come from the defendant or a person acting for him.*' " (Emphasis in original and added.) *Wills*, 229 Ill. 2d at 411 (quoting Restatement (Second) of Torts § 920A(2) cmt. b (1979)). Here, the benefits for which defendant seeks setoff did come from "defendant or a person acting for him." He is seeking credit for the payment previously made by his insurer, American Heartland, acting on his behalf. The collateral source rule, therefore, does not apply to those benefits. Accordingly, the court erred in denying defendant's motion for setoff of the amount American Heartland paid State Farm in settlement of plaintiff's medical expenses.

¶ 27   Plaintiff points out that defendant's claim for a $5,000 setoff rests on the premise that the allocation reached between State Farm and American Heartland in their subrogation settlement extends to and binds plaintiff. She argues, without citation, that, under Illinois law, a subrogation lawsuit brought by a subrogee has no binding effect on the insured party's subsequent lawsuit. Citing generally to *Coronet Insurance Co. v. Travers*, 282 Ill. App. 3d 920 (1996), she then asserts that no theory of collateral estoppel or *res judicata* supports extending the allocation of damages agreed to by the two insurers in the settlement agreement to bind her. *Coronet Insurance* is entirely irrelevant to plaintiff's argument. Although the decision concerns the use of offensive collateral estoppel, it makes no determination whatsoever regarding whether the allocation of damages agreed to by two insurance companies in a settlement agreement binds the plaintiff. The issue was not before the court and the court, therefore, did not consider it. Given that plaintiff failed to support her assertions regarding the binding effect of the settlement agreement with relevant authority, we need not consider them. However, we will address them briefly, and find that the settlement agreement between State Farm and American Heartland does bind plaintiff.

¶ 28   State Farm entered into the settlement agreement as Segovia's subrogee. Segovia is the insured under the State Farm policy and State Farm paid plaintiff's medical expenses because she is Segovia's wife and, presumably, an insured under the policy.[5] " '[I]n many respects, our legal system views a marital couple as a single economic unit.' " *Muranyi v. Turn Verein Frisch-Auf*, 308 Ill. App. 3d 213, 217 (1999) (quoting *Hassan v. United States Postal Service*, 842 F.2d 260, 264 (11th Cir. 1988)). Often, the financial interests of a husband and wife "are closely intertwined, if not actually blended into one set of interests." *Muranyi*, 308 Ill. App. 3d at 217-18. For example:

> "Ordinarily, one spouse's expenses are really the expenses of the family unit, often paid for in marital funds and necessarily affecting the economic well being of both

---

[5]There is no copy of the State Farm policy in the record by which we can verify this but the parties seem to agree that State Farm considered plaintiff an insured through her husband's policy.

spouses (and their dependents, if any). When one spouse accepts lower wages in return for employment-based medical insurance, the other spouse equally accepts and lives with the consequences of that bargain." *Muranyi*, 308 Ill. App. 3d at 218.

State Farm paid plaintiff's medical expenses because it considered plaintiff to be its insured under her husband Segovia's policy. Plaintiff accepted the benefits of that policy by allowing State Farm to pay her medical expenses. For the purposes of the policy, plaintiff is "one economic unit" with Segovia and is, therefore, bound by the settlement agreement between State Farm, as Segovia's subrogree, and American Heartland.

¶ 29 Plaintiff further argues that, under section 2-403(d) of the Illinois Code of Civil Procedure, even a judgment in State Farm's subrogation case would have no *res judicata* or collateral estoppel effect in her own lawsuit. Section 2-403(d) provides as follows:

"A judgment in an action brought and conducted by a subrogee by virtue of the subrogation provision of any contract or by virtue of any subrogation by operation of law, whether in the name of the subrogor or otherwise, is not a bar or a determination on the merits of the case or any aspect thereof in an action by the subrogor to recover upon any other cause of action arising out of the same transaction or series of transactions." 735 ILCS 5/2-403(d) (West 2010).

Given that State Farm voluntarily dismissed its subrogation action against defendant following settlement, there was no judgment in the subrogation action and section 2-403(d) is irrelevant. There is no merit to this argument.

¶ 30 Given that the settlement agreement reached between State Farm and American Heartland in the subrogation action compromised the claim for $5,000 in medical payments asserted by State Farm, and that said claim was released, we find that defendant is entitled to a setoff in this matter for $5,000.

¶ 31                                                    CONCLUSION

¶ 32 For the reasons stated above, we reverse the decision of the circuit court and remand the matter for entry of an order in accordance with this decision.

¶ 33 Reversed and remanded.