452 So.2d 514 (1984)
FLORIDA PHYSICIAN'S INSURANCE RECIPROCAL, et al., Petitioners,
v.
THOMAS MIACLE STANLEY, etc., et al., Respondents.
No. 63327.
Supreme Court of Florida.
April 12, 1984.
Rehearing Denied July 24, 1984.
James C. Rinaman, Jr. and Nick V. Pulignano, Jr. of Marks, Gray, Conroy & Gibbs, Jacksonville, for James Eugene Glenn, J. Eugene Glenn, M.D., P.A., and Florida Physician's Ins. Reciprocal.
L. Haldane Taylor, Jacksonville, for Florida Patient's Compensation Fund.
James H. McCarty, Jr. of Boyd, Jenerette, Staas, Joos, Williams & Felton, Jacksonville, for St. Vincent's Medical Center and United States Fidelity & Guaranty Co.
James T. Terrell and Wayne Hogan of Brown, Terrell & Hogan, Jacksonville, for respondents.
McDONALD, Justice.
This case is before us to review a district court decision, Stanley v. U.S. Fidelity & Guaranty Co., 425 So.2d 608 (Fla. 1st DCA 1982), which reversed a judgment for the defendants in a medical malpractice action and remanded for a new trial. The district court held that the jury verdict had been tainted by improperly adduced evidence as to the charitable and governmental sources for the special therapy and education needed by the injured minor plaintiff and available to his family at little or no cost regardless of who caused the injury. Id. at 609. In an unpublished order denying the defendants' motion for rehearing the district court certified to us that this decision passes on the following question of great public importance:

*515 Should Florida courts exclude from jury consideration evidence of the availability of free public schools, and free or low-cost public or private non-profit therapy services to all members of the public because of the common law collateral source rule?
We have jurisdiction under article V, section 3(b)(4) of the Florida Constitution. We answer the certified question in the negative and quash the decision under review.
Tommy Stanley and his parents brought a medical malpractice action against the petitioners to recover damages for the retardation and cerebral palsy Tommy has suffered since birth. The Stanleys alleged that Tommy's injuries resulted from the negligent failure to diagnose and properly treat an oxygen deprivation which began shortly before Tommy's birth. Petitioners denied that theory of injury and asserted that congenital defects caused Tommy's debilitated condition. Both sides produced expert witnesses to support their respective theories of causation.
In order to prove specific damages the Stanleys presented expert testimony as to the expected cost of physical therapy, speech therapy, and special education Tommy would need. The trial court permitted the petitioners, over the Stanleys' objection, to cross-examine these expert witnesses about the availability and effectiveness of free or low-cost charitable and governmental programs available in the community to meet Tommy's needs. Petitioners' counsel used this information in summation to argue that Tommy could be taken care of in the community if the jury did not find the petitioners liable for Tommy's injuries. The jury found no liability, and the Stanleys appealed. The district court reversed and remanded for a new trial, holding that the admission of evidence concerning the available charitably and governmentally funded care violated the common-law collateral source rule.
Petitioners claim that evidence of free or low cost services from governmental or charitable agencies available to anyone with specific disabilities is admissible on the issue of future damages. We agree. Such evidence violates neither the statutory nor the common-law collateral source rule and does not, therefore, require a new trial.
The district court correctly found section 768.50, Florida Statutes (1981), inapplicable to the unliquidated future damages at issue here. Section 768.50, which requires the trial court to reduce the jury verdict award in medical malpractice cases by the amount of all collateral source payments available to the plaintiff, only addresses liquidated collateral source payments which have been paid. However, the district court should also have found that the admission in this case of evidence concerning future governmental and charitable services did not violate the common-law collateral source rule.
We believe that the common-law collateral source rule should be limited to those benefits earned in some way by the plaintiff. Governmental or charitable benefits available to all citizens, regardless of wealth or status, should be admissible for the jury to consider in determining the reasonable cost of necessary future care. Keeping such evidence from the jury may provide an undeserved and unnecessary windfall to the plaintiff. We find persuasive the following reasoning advanced by the Supreme Court of Illinois in refusing to allow a plaintiff a windfall recovery for the value of free medical services received in a charitable hospital:
[T]he policy behind the collateral-source rule simply is not applicable if the plaintiff has incurred no expense, obligation, or liability in obtaining the services for which he seeks compensation. This is further made apparent upon comparison of the present case with a situation in which the collateral-source rule is frequently applied, that of the defendant who seeks a reduction in damages because the plaintiff has received insurance benefits. "It is a well-settled rule of damages that the amount recoverable for tortious personal injuries is not decreased *516 by the fact that the injured party has been wholly or partly indemnified for the loss by proceeds from accident insurance where the tortfeasor did not contribute to the payment of the premiums of such insurance. This rule is usually justified on the basis that the wrongdoer should not benefit from the expenditures made by the injured party in procuring the insurance coverage." (Emphasis added.) (22 Am.Jur.2d Damages sec. 210, at 293-94 (1965).) In a situation in which the injured party incurs no expense, obligation, or liability, we see no justification for applying the rule. We refuse to join those courts which, without consideration of the facts of each case, blindly adhere to "the collateral source rule, permitting the plaintiff to exceed compensatory limits in the interest of insuring an impact upon the defendant." (Note, Unreason in the Law of Damages: The Collateral Source Rule, 77 Harv.L.Rev. 741, 742 (1964) (hereafter Unreason).) The purpose of compensatory tort damages is to compensate (Restatement (Second) of Torts sec. 903, comment a (1979)), it is not the purpose of such damages to punish defendants or bestow a windfall upon plaintiffs. The view that a windfall, if any is to be enjoyed, should go to the plaintiff (Grayson v. Williams (10th Cir.1958), 256 F.2d 61, 65) borders too closely on approval of unwarranted punitive damages, and it is a view not espoused by our cases.
Peterson v. Lou Bachrodt Chevrolet Co., 76 Ill.2d 353, 362-63, 29 Ill.Dec. 444, 448, 392 N.E.2d 1, 5 (1979).
The reasons set forth in Peterson are just as valid in the present case. The jury properly heard all the relevant evidence on future damages. We cannot agree with the district court that such evidence tainted the jury verdict for the defendants on liability.
This opinion should not be interpreted as limiting a plaintiff suffering from a particular continuing disability to recover only the future cost of the free or low cost governmental or charitable care available to all persons with that disability. Evidence of availability, cost, and quality of such care is relevant to assist the jury in determining the reasonable cost of the plaintiff's future care. The jury remains free to find that the publicly available services do not meet the plaintiff's future needs. The jury may find private care at higher cost more appropriate in some circumstances, but the jury should consider those future services available to all, regardless of wealth or status, when deciding on the proper award of future damages. The trial court did not err by allowing such consideration by the jury in this case.
We need not reach petitioners' harmless error issue because we have determined that the evidence objected to does not violate the collateral source rule. Accordingly, we quash the decision under review and remand for proceedings consistent with this opinion.
It is so ordered.
ALDERMAN, C.J., and OVERTON and EHRLICH, JJ., concur.
SHAW, J., dissents with an opinion, in which ADKINS and BOYD, JJ., concur.
SHAW, Justice, dissenting.
In adopting the reasoning of the Illinois Supreme Court in Peterson v. Lou Bachrodt Chevrolet Co., 76 Ill.2d 353, 392 N.E.2d 1 (1979), the majority fails to appreciate the factual dissimilarity to the present case. A critical distinction between the two cases is that in Peterson the plaintiff voluntarily applied for, received, and completed charitable surgical services from the Shriners' Hospital prior to seeking compensation for the same services from the tort-feasor. The Illinois Supreme Court held that the collateral source rule simply does not apply if the plaintiff has incurred no expense, obligation, or liability in obtaining the services for which he seeks compensation. I read this as simply stating that an individual is not entitled to recover for the value of previously rendered free services he has voluntarily obtained.
*517 The Peterson court was not called upon to, nor did it, decide the issue of reducing tortfeasor liability for future care because of the current availability of charitable and public welfare programs. In Peterson the charitable assistance had already been received. Here the availability and level of future charitable assistance is a matter of speculation. The majority's extended quote from Peterson, therefore, is inapplicable to the case under consideration. As the majority opinion points out, the trial court permitted the petitioners, over the Stanleys' objections, to cross examine expert witnesses about the current availability and effectiveness of free or low cost charitable and governmental programs available in the community to meet Tommy's needs, and to use this information in summation to argue that Tommy would be taken care of in the community even if the tortfeasor were not held fully liable for Tommy's injuries.
For the reasons articulated, I feel that Peterson is factually dissimilar and the reasoning therein is inapposite. Even were I inclined to follow the Peterson rationale, I would not be inclined to extrapolate by taking the rationale a second step and applying it to the speculative value of future public assistance. There is simply no assurance that public assistance will continue, that the injured victim will continue to be eligible for such assistance if it continues, or that the assistance, if it continues, will continue at the same level. By denying the victim full compensation for the cost of future care, the majority opinion transfers the responsibility for the tort from the tortfeasor, where it legally and morally belongs, to the victim and the community. I cannot agree that an injured victim should be required to seek charity or public aid, or that the compassion of charitable contributors and taxpayers should become a device for reducing the legal liability of a tortfeasor.
In my opinion the decision below is a well-reasoned and correct statement of the law. I would answer the certified question in the affirmative and approve the decision of the district court in Stanley v. U.S. Fidelity & Guaranty Co., 425 So.2d 608 (Fla. 1st DCA 1982).
ADKINS and BOYD, JJ., concur.