695 So.2d 424 (1997)
Ralph PARKER and Ricky Parker, Appellants,
v.
Jeffrey Todd HOPPOCK, Earl Eugene Hart, J & P Enterprises, Inc., d/b/a Domino's Pizza, and Domino's Pizza, Inc., Appellees.
No. 95-1678.
District Court of Appeal of Florida, Fourth District.
May 21, 1997.
Rehearing Denied July 1, 1997.
*425 Philip M. Burlington of Caruso, Burlington, Bohn & Compiani, P.A., and C. Calvin Warriner of Searcy, Denney, Scarola, Barnhart & Shipley, P.A., West Palm Beach, for appellants.
*426 Michele I. Nelson of Paxton, Crow, Bragg, Smith & Keyser, P.A., West Palm Beach, for appellee Jeffrey Todd Hoppock.
James A. Coleman and David C. Knapp of Rogers, Dowling, Fleming & Coleman, P.A., Orlando, for appellee Earl Gene Hart.
Garrison M. Dundas and Stephen G. Hayskar of Brennan, Hayskar, Jefferson, Walker & Schwerer, P.A., Fort Pierce, for appellee J & P Enterprises, Inc., d/b/a Domino's Pizza.
Richard S. Womble and Richard B. Mangan, Jr., of Rissman, Weisberg, Barrett, Hurt, Donahue & McLain, P.A., Orlando, for appellee Domino's Pizza, Inc.
PARIENTE, Judge.
Plaintiffs appeal an adverse jury verdict in favor of Domino's Pizza, Inc. (Domino's). Plaintiffs also appeal a jury verdict in their favor against all other defendants, asserting that the amount awarded for economic damages demonstrates the prejudicial effect of improper testimony on the jury's verdict. We agree that the admission of impermissible testimony that plaintiffs' receipt of welfare and governmental benefits would adversely impact their motivation to work warrants reversal for a new trial as to all defendants except for Domino's.
Plaintiffs' claims arose from two interrelated accidents that took place in front of the Okeechobee County Civic Center. It is undisputed that in the first accident, defendant Jeffrey Todd Hoppock lost control of his vehicle, causing a head-on collision with another vehicle. At that time, Hoppock was working for defendant J & P Enterprises, Inc. (J & P), a Domino's franchise in Okeechobee.
Immediately following the first accident, plaintiffs Ralph Parker and Ricky Parker ran to offer their assistance. Shortly thereafter, defendant Earl Eugene Hart approached the scene in his vehicle. Failing to timely see the disabled vehicles, Hart collided with one of them, striking plaintiffs in the process.
As a result of this collision, plaintiff Ricky Parker had his left leg traumatically amputated below the knee. He also suffered a comminuted fracture to the tibia and fibula of his right leg. Plaintiff Ralph Parker suffered a fractured femur of the left leg, as well as severe fractures of the fibula and the tibia on the right leg.
Through special interrogatories, the jury was asked to allocate fault among Hoppock, Hart and each plaintiff for that plaintiff's injuries. As to plaintiff Ricky Parker, the jury found Hoppock 10% at fault, Hart 70% at fault, and Ricky Parker 20% at fault. As to plaintiff Ralph Parker, the jury found Hoppock 10% at fault, Hart 60% at fault, and Ralph Parker 30% at fault.
The jury determined that plaintiff Ralph Parker's total damages amounted to $536,600, which included $133,000 in past economic losses and $85,600 for future economic damages. The total award was within the range suggested by defense counsel as reasonable for the total amount of damages. However, the award of only $85,600 for future economic damages was significantly lower than the range of $150,000 to $198,000 suggested by defense counsel in closing arguments as appropriate for this element of damages.
As to plaintiff Ricky Parker, the jury awarded a total of $450,000, which was significantly less than the $648,000 suggested by at least one defense attorney. The total award included $146,000 in past economic losses, which was $22,000 less than the amount suggested by defense counsel. Moreover, the total award included $64,000 in future economic damages, an amount significantly less than the $260,000 to $300,000 range suggested by defense counsel.
In addition, the jury was asked to determine whether J & P was the agent of Domino's. The jury found that J & P was not Domino's agent.

GOVERNMENTAL BENEFITS TESTIMONY
Prior to trial, plaintiffs filed a motion in limine to prevent defendants from mentioning that plaintiffs were receiving various forms of governmental assistance. The trial court deferred ruling after defendants agreed not to mention that fact in opening statement.
*427 During cross-examination of plaintiff Ralph Parker, the issue surfaced. Defendants first elicited that Ralph Parker had obtained a housing subsidy. When defense counsel asked if he was receiving any other forms of assistance, plaintiffs' counsel objected. The trial court overruled the objection, and Ralph Parker answered that he received food stamps and AFDC (a form of welfare) for his four children. During cross-examination of plaintiffs' expert, the jury learned that plaintiff Ricky Parker was receiving Social Security benefits.
Prior to the testimony of defendants' rehabilitation expert, plaintiffs again objected to any reference to governmental benefits and to the expert's anticipated testimony concerning receipt of benefits and motivation to return to work. The trial court overruled the objection.
The rehabilitation expert then testified that receipt of governmental benefits by those who earn at or near the minimum wage adversely affects a person's motivation to work. The expert had never met with nor spoken to plaintiffs and referred to no studies to back up his "opinions," which essentially amounted to no more than conjecture. For example, the expert testified that it would be "pretty hard to get fired up to go back to work with all the issues that you have to deal with if it, in fact, jeopardizes some of the benefits that you might have."
The theory put forth in the rehabilitation expert's testimony was woven into closing argument:
The fact that he decides not to go out and do that work because, why go out and work if you cannot end up with any less money in your pocket; that's another question, okay?
If he decides to take government benefits and not work, that's his choice, but it's not as a result of injuries he received in this accident.
Cook v. Eney, 277 So.2d 848 (Fla. 3d DCA), cert. denied, 285 So.2d 414 (Fla.1973), was the first case in Florida to address the highly prejudicial effect of testimony regarding receipt of governmental benefits. In Cook, a medical malpractice suit, the plaintiff received social security and worker's compensation benefits, which the defendant sought to admit for the limited purpose of rebutting or impeaching testimony concerning the plaintiff's motivation and desire to return to work. In reversing a defense verdict, the third district set forth the general rule that evidence of such benefits constitutes prejudicial error likely to influence the jury against the plaintiff not only on the issue of damages, but also on the issue of liability. Id. at 850.
The defendant argued in Cook that the evidence was relevant because it had been offered to rebut the plaintiff's testimony regarding motivation to return to work. The third district responded that this precise argument had been effectively disposed of by the United States Supreme Court in Eichel v. New York Central Railroad Co., 375 U.S. 253, 84 S.Ct. 316, 11 L.Ed.2d 307 (1963):
In our view the likelihood of misuse by the jury clearly outweighs the value of this evidence. Insofar as the evidence bears on the issue of malingering, there will generally be other evidence having more probative value and involving less likelihood of prejudice than the receipt of a disability pension .... (a showing of) receipt of collateral social insurance benefits involves a substantial likelihood of prejudicial impact.
Cook, 277 So.2d at 850 (emphasis supplied).
Our court followed Cook in Williams v. Pincombe, 309 So.2d 10 (Fla. 4th DCA 1975), an automobile accident case that resulted in a defense verdict in the trial court. We found reversible error in the admission of evidence that the plaintiff received welfare benefits for her children where that testimony was offered "for the purpose of rebutting the plaintiff's testimony regarding her motivation to return to work." Id. at 11. Pincombe agreed with Cook that evidence concerning receipt of such benefits tends to confuse and mislead the jury on the issue of liability. Id. The prejudicial effect of such evidence on the issue of malingering outweighs its probative value. Id. Thus, the testimony here concerning plaintiffs' governmental benefits and the resultant effect on plaintiffs' motivation to work was inadmissible pursuant to Pincombe and Cook.
*428 Defendants contend that Pincombe and Cook have been effectively overruled by our supreme court's decision in Florida Physician's Insurance Reciprocal v. Stanley, 452 So.2d 514 (Fla.1984). In Stanley, the plaintiffs sought substantial damages for their child's retardation and cerebral palsy, which they claimed to be the result of medical malpractice. The plaintiffs elicited testimony concerning the expected cost of physical therapy, speech therapy and special education. Over the plaintiffs' objection, the trial court permitted cross-examination about the "availability and effectiveness of free or low-cost charitable and governmental programs available in the community to meet [the child's] needs." Id. at 515. Our supreme court held that "[g]overnmental or charitable benefits available to all citizens, regardless of wealth or status, should be admissible for the jury to consider in determining the reasonable cost of necessary future care." Id. (emphasis added).
Stanley did not abrogate either Cook or Pincombe. The holding in Stanley applies only to testimony concerning benefits available to all citizens "regardless of wealth or status" and then only on the issue of the reasonable cost of a plaintiff's future medical care. Welfare benefits obviously are not available regardless of wealth, and the testimony elicited in this case was not intended to assess the amount of necessary future medical care.
Moreover, Pincombe was approved by our supreme court in Gormley v. GTE Products Corp., 587 So.2d 455, 456 n. 1 (Fla.1991). Gormley specifically cited to Pincombe's holding that it was reversible error to admit evidence of a plaintiff's receipt of welfare benefits, even for the purpose of impeaching motivation to work. Id. at 457.
Defendants argue that because the benefits here were not paid for or earned by plaintiffs, there was no reason to exclude reference to those benefits from evidence. While there is dicta in Stanley that the "common-law collateral source rule [excluding testimony about benefits received by a plaintiff] should be limited to those benefits earned in some way by the plaintiff," 452 So.2d at 515, the term "collateral sources" has never been limited to those benefits that a plaintiff has earned or paid for.[1]
Even if welfare benefits did not fit within the term "collateral sources," the admission of testimony concerning receipt of welfare benefits as affecting motivation to work would still be impermissible. The very image of a plaintiff as one who accepts governmental hand-outs carries a substantial likelihood of prejudice that outweighs any marginal probative value. See § 90.403, Fla. Stat. (1995); Pincombe; Cook.
In the current political climate, there is no doubt that substantial social stigma may attach to one labeled as a welfare recipient. The type of testimony offered in this case, and then woven into closing argument, denigrated plaintiffs by implying that they would rather accept governmental hand-outs than work for a living. Even though there is no empirical data proving that an individual would prefer welfare to work, the myth persists. The substantial prejudice flowing from this image is in addition to the prejudice arising from the nefarious image of a plaintiff trying to obtain a double recovery. See Gormley, 587 So.2d at 458; Cook, 277 So.2d at 850.

HARMLESS ERROR ANALYSIS
Plaintiffs received a verdict against all defendants except Domino's. The amount of economic damages was considerably less than even defense counsel in closing argument suggested was reasonable. While a jury is not bound by lawyers' arguments regarding amounts, those arguments are certainly relevant in determining the reasonableness of the jury's decision. See, e.g., *429 Short v. Ehrler, 510 So.2d 1110 (Fla. 4th DCA 1987).
Defendants Hoppock, J & P and Hart have not demonstrated that the error here was harmless. See Gormley, 587 So.2d at 459. Because we cannot state that the improper testimony and related references in closing argument did not affect the jury's determination of damages and its apportionment of fault between defendants and plaintiffs, a new trial on all issues is warranted as to these defendants. See Calloway v. Dania Jai Alai Palace, Inc., 560 So.2d 808, 809 (Fla. 4th), review denied, 576 So.2d 285 (Fla. 1990); Pincombe; Cook.
Domino's, the sole defendant to receive a verdict in its favor, asserts that we should affirm its favorable liability verdict because the testimony concerning receipt of governmental benefits as affecting motivation to work could not have influenced the jury's determination of the agency issue. Gormley addresses this issue.
In Gormley, our supreme court quashed the opinion of the third district in Gormley v. GTE Products Corp., 549 So.2d 729 (Fla. 3d DCA 1989), which had concluded that because the jury found no liability, the admission of collateral source evidence could not have "infected the jury's liability determination." Gormley, 587 So.2d at 457. Our supreme court disagreed that admission of collateral source evidence affects only the determination of damages. It found that admission of a collateral source is "reversible error precisely because it prejudices the jury's determination of liability." Id.
Despite its strong statements in Gormley, our supreme court did not announce a per se rule of reversal wherever collateral source testimony is erroneously admitted and a verdict of no liability is rendered. Rather, Gormley holds that the party who offered the evidence bears the burden of demonstrating that the error was harmless. Id. at 459.
In Gormley, the plaintiffs sought to recover $68,700 in both personal injury and property damages against the manufacturer of a television set believed to be the source of a fire in the plaintiffs' home. To impeach the plaintiffs' claim, the defendant introduced an insurance claim placing property damage at $19,823. In reversing for a new trial, our supreme court found that liability was close and the "likelihood of improper influence on the liability issue was not rebutted by the one who introduced the evidence." Id.
Here, Domino's argues that the only issue as to its liability was whether Domino's was responsible for the actions of its franchisee, whose employee caused the first accident. The issue of agency rested on the jury's determination of the nature and extent of the relationship between Domino's and J & P, as evidenced by the franchise agreement, the operating manual, and testimony as to the extent of control. Domino's argues that the actions of plaintiffs would not have been a factor entering into a determination of this issue. Thus, any prejudice arising from testimony concerning plaintiffs' motivation to work should not have affected the jury's determination of the agency issue.
If Domino's had been the only defendant in this case or if plaintiff had not received a liability verdict against any defendant, it would be difficult to conclude, based on Gormley, Pincombe and Cook, that the prejudicial testimony did not affect a finding of no liability. "Because a jury's fair assessment of liability is fundamental to justice, its verdict on liability must be free from doubt, based on conviction, and not a function of compromise." Id. at 458.
In Gormley, Pincombe and Cook, there was a defense verdict. Here, however, liability verdicts were returned in favor of plaintiffs against all defendants except Domino's. Plaintiffs have pointed to the amount of economic damages awarded as evidence of the prejudicial effect of the improper testimony on the jury verdict.
We fail to see how testimony concerning plaintiffs' receipt of benefits might have affected the jury's ability to properly evaluate the agency issue. The fact that liability verdicts were returned against the other defendants, in addition to the nature of the agency issue the jury had to decide, compels us to conclude that any error was harmless as to Domino's. Accordingly, we affirm the verdict as to Domino's.
*430 We further reject plaintiffs' argument that they were entitled to a verdict on the issue of agency as a matter of law. In Parker v. Domino's Pizza, Inc., 629 So.2d 1026 (Fla. 4th DCA 1993), review denied, 639 So.2d 977 (Fla.1994), this court, in reversing a summary judgment in favor of Domino's on the agency issue, concluded that issues of fact remained. Nothing in this record supports plaintiffs' contention that it was improper for the jury to resolve the agency issue. See id.; Ortega v. General Motors Corp., 392 So.2d 40 (Fla. 4th DCA 1980).

IMPROPER CLOSING REMARKS
As an additional point on appeal, plaintiffs assert that the following objected-to remarks in closing argument were improper:
Our society is such that, for whatever reason, it seems that we've gotten to the point that every time something happens, it has to be somebody else's fault. Even criminals in courtrooms now, blaming the system, their parents, their upbringing, their schooling; it's somebody else's fault.
Defendants argue that the remarks were proper because they were made in the context of plaintiffs' refusal to acknowledge responsibility for their comparative negligence. We disagree. We find the remarks to be beyond the scope of permissible argument, especially considering the facts of this case.
We find the remarks to be also improper because they referred to matters outside of the evidence. Reference to "criminals" not accepting responsibility for their actions simply had no place in this lawsuit. By conjuring up distasteful images of society's ills from frivolous lawsuits to the refusal to take responsibility for one's own actions, these remarks diverted the jury's attention from the issues it should have been deciding.
These remarks are similar to those condemned in Stokes v. Wet `N Wild, Inc., 523 So.2d 181 (Fla. 5th DCA 1988), and to a portion of those condemned in Bellsouth Human Resources Administration, Inc. v. Colatarci, 641 So.2d 427 (Fla. 4th DCA 1994). "What other lawyers have done, what has occurred in other law suits, and what other corporations have done, are things which are clearly outside the bounds" of acceptable argument. Colatarci, 641 So.2d at 430. Remarks such as these have the potential of adding to the "considerable harm to the already impaired reputation of the legal profession" and our judicial system. See Hartford Accident and Indem. Co. v. Ocha, 472 So.2d 1338, 1343 (Fla. 4th DCA), review denied, 478 So.2d 54 (Fla.1985).
These remarks alone would not have warranted reversal, and we find the remarks harmless error as to Domino's, based on our previous analysis. On retrial, however, counsel should avoid making similar arguments.

JURY INSTRUCTIONS
We briefly address the remaining points that relate to jury instructions requested by plaintiffs. In light of the other instructions given by the trial court, we find that it was error not to instruct the jury in accordance with Florida Standard Jury Instruction 4.11 that a driver's failure to stop at a stop sign is a statutory violation that may be considered by the jury as evidence of negligence. See Seaboard Coastline R.R. v. Addison, 502 So.2d 1241 (Fla.1987); Bell v. Harland Rayvals Transp., Ltd., 501 So.2d 1321 (Fla. 4th DCA 1986).
We do not agree with plaintiffs, however, based on the evidence presented and the arguments made in this case, that it was error for the trial court to refuse to give a concurring cause instruction. This instruction is appropriate where two or more separate and distinct causes operate contemporaneously to produce a single injury. See Goldschmidt v. Holman, 571 So.2d 422 (Fla. 1990); Auster v. Gertrude & Philip Strax Breast Cancer Detection Inst., 649 So.2d 883 (Fla. 4th DCA 1995). There was no evidence presented nor argument made at trial that the actions or inactions of Hoppock, the defendant driver in the first accident, operated contemporaneously with the actions or inactions of Hart, the defendant driver in the second accident. The comparative negligence of a plaintiff alone does not require the giving of a concurring cause instruction where no other extraneous concurring cause is established. See Wedden v. Wentz, 571 So.2d 24, 24 (Fla. 2d DCA 1990), review *431 denied, 576 So.2d 294 (Fla.1991); see also Little v. Miller, 311 So.2d 116 (Fla. 4th DCA 1975).
Finally, we find no error in the trial court's denial of plaintiffs' special requested instruction concerning the franchise agreement between Domino's and its franchisee.

CONCLUSION
Accordingly, this case is reversed and remanded for a new trial on damages and liability as to all defendants except Domino's. We affirm the verdict as to Domino's. As to the other defendants, we cannot state that the prejudicial testimony did not affect the jury's determination of damages and the apportionment of fault. Defendants Hoppock, J & P and Hart have not demonstrated that the error was harmless. In addition, the objectionable closing argument remarks and the failure to give the requested jury instruction on violation of a traffic regulation further support our decision not to limit a new trial to damages. It follows that the cost judgments are reversed as to all defendants except Domino's.
GLICKSTEIN and DELL, JJ., concur.
NOTES
[1] In Gormley, our supreme court, citing to Black's Law Dictionary, defined "collateral source" as "[c]ompensation from a source wholly independent of the dependent tortfeasor." Gormley v. GTE Prods. Corp., 587 So.2d 455, 457 n. 4. Welfare benefits clearly fit this definition. In addition, statutes dealing with collateral sources have listed as collateral sources any payments by "public programs providing medical expenses, disability payments, or other similar benefits." See, e.g., § 768.76(2)(a)1, Fla. Stat. (1995). Here, there was a stipulation that collateral sources would be addressed post-trial.