868 So.2d 547 (2003)
THYSSENKRUPP ELEVATOR CORPORATION, Appellant,
v.
Beatrice LASKY, Appellee.
No. 4D03-2838.
District Court of Appeal of Florida, Fourth District.
December 31, 2003.
Opinion Denying Rehearing March 10, 2004.
*548 John R. Hargrove and Carol A. Gart of Heinrich, Gordon, Hargrove, Weihe & James, P.A., Fort Lauderdale, for appellant.
Jane-Kreusler Walsh of Jane Kreusler-Walsh, West Palm Beach, and Malcolm A. Purow of Malcolm A. Purow, Weston, for appellee.
FARMER, C.J.
Plaintiff was injured by an elevator door closing on her, causing her to fall and break her hip. Formerly in good health, she claimed she now has chronic pain and sought damages. After a four day trial, the jury awarded her $269,000 and found no comparative negligence. The issues on appeal relate to the process leading to the jury's verdict and the propriety of entering judgment for past medical expenses that include charges eliminated by Medicare payment. We affirm the issue relating to the jury verdict but reverse on the damages issue.
The verdict is assailed as having been coerced by an improper Allen[1] charge. The circumstances arose after the jury had deliberated for 3½ hours. The foreman advised the court that the jury "cannot come to an agreement" and asked whether their verdict had to be unanimous. At that point, and with the agreement of counsel, the court gave the standard Allen charge. The jury returned to the jury room but soon announced a verdict. Defense counsel asked that the jury be polled. Juror number one simply nodded her head without any verbal response. When asked what her response was, she said "I said `no' the first time."
At that point the trial judge said: "I have to have a unanimous verdict. I must send the jury back. The jury must be unanimous for the verdict." Neither counsel objected at that point to the judge's instructions in sending the jury back to deliberate. The jury then went back to the jury room. When the jury left, defense counsel said:
"Juror number one made it crystal clear. To send her back in there under pressure-now we know the other five said `yes'. She's the lone hold out. She was shaking her head `no'. She didn't want to go back in there with them. It isn't her verdict, and we said it was going to be unanimous."
The jury returned minutes later and announced the same verdict. The jury was again polled, and this time all jurors stated that they had agreed to the verdict. Defense counsel asked the court to inquire of juror one as to why she changed her mind, but the court denied the interview. The trial court also denied post trial motions for a new trial based on the contention that the verdict was coerced and for a reduction in the past medical expenses awarded for the amount of provider *549 charges eliminated by payment from Medicare.
The coerced verdict issue was not preserved. Defendant failed to make a contemporaneous objection to the court's instruction to return to deliberate, that the verdict had to be unanimous. Counsel's statement after the jury left the courtroomwhich we have quoted aboveis not in the form of an objection and entirely omits any request for relief. Counsel did not ask for a mistrial. Moreover, while the judge was telling the jury that he was required to send the jury back, that a verdict must be unanimous, defendant made no objection to what he was saying. Defendant did not suggest any different formulation of words to use in instructing the jury. This is functionally indistinguishable from failing to object to an instruction actually given, and failing to suggest what the proper instruction should be.
We also point out that even if properly preserved, defendant has not shown an abuse of discretion by the trial judge when the juror initially indicated that the verdict was not hers. Alicot v. Dade County, 132 So.2d 302 (Fla. 3d DCA 1961). Moreover, when there is some question as to the process by which a verdict is returned, "a subsequent polling of the jury and their separate answers relieves the verdict from all objection." 132 So.2d at 303. The juror was obviously not inhibited in stating objections to a verdict, for she freely did so the first time. The Allen charge made clear that she did not have to agree with the other jurors, that she was not being required to give up her conscientiously held view of the evidence. Her free assent to the final verdict evidences that she was not coerced. The trial court's decision not to have her respond to questions as to why she joined in the verdict is supported by law. Brutton v. State, 632 So.2d 1080 (Fla. 4th DCA 1994).
We turn to the damages issue. Defendant seeks a reduction in the award of medical expenses equal to the amount by which a provider's charges were reduced upon acceptance of payment from Medicare. Section 768.76(1) provides:
"In any action to which this part applies... the court shall reduce the amount of such award by the total of all amounts which have been paid for the benefit of the claimant ... from all collateral sources; however, there shall be no reduction for collateral sources for which a subrogation or reimbursement right exists."
§ 768.76(1), Fla. Stat. (2003). The parties do not dispute the fact that payment by Medicare requires the provider to whom payment is made to accept such amount in full satisfaction of the total charge even though the amount charged exceeds the amount paid by Medicare. Defendant emphasizes that as a matter of law plaintiff will never have to pay the difference between the amount charged by the provider and the amount the provider accepted from Medicare. The result, defendant argues, is that this difference is either inadmissible as "damages" suffered by plaintiff or that a setoff is required by section 768.76 because this is an unwarranted surplus damage awarded to plaintiff. We agree.
We find instructive the supreme court's explanation in Florida Physician's Insurance Reciprocal v. Stanley, 452 So.2d 514 (Fla.1984). In that case, plaintiff contended that its economic damages were slighted by the jury because of the admission of evidence as to the charitable and governmental sources for the special therapy and education needed by the injured minor plaintiff and available to his family at little or no cost regardless of who caused the injury. The defendant in that case argued that evidence of free or low cost services *550 from governmental or charitable agencies available to anyone with specific disabilities is admissible on the issue of future damages. In holding that such evidence did not violate the collateral source rule, the court explained:
"We believe that the common-law collateral source rule should be limited to those benefits earned in some way by the plaintiff. Governmental or charitable benefits available to all citizens, regardless of wealth or status, should be admissible for the jury to consider in determining the reasonable cost of necessary future care. Keeping such evidence from the jury may provide an undeserved and unnecessary windfall to the plaintiff....

[T]he policy behind the collateralsource rule simply is not applicable if the plaintiff has incurred no expense, obligation, or liability in obtaining the services for which he seeks compensation.... `It is a well-settled rule of damages that the amount recoverable for tortious personal injuries is not decreased by the fact that the injured party has been wholly or partly indemnified for the loss by proceeds from accident insurance where the tortfeasor did not contribute to the payment of the premiums of such insurance.... In a situation in which the injured party incurs no expense, obligation, or liability, we see no justification for applying the rule.
(Quoting from Peterson v. Lou Bachrodt Chevrolet Co., 76 Ill.2d 353, 362-63, 29 Ill.Dec. 444, 448, 392 N.E.2d 1, 5 (1979))." [e.s., c.o.]
452 So.2d at 515-16. The same rationale was implicitly followed by this court in Dourado v. Ford Motor Co., 843 So.2d 913 (Fla. 4th DCA 2003), where we held that it was error to admit evidence of medical expenses not charged against the estate or paid by or on behalf of the decedent.
Allowing the admission of evidence of the excess discharged by Medicare payment has the effect of "provid[ing] an undeserved and unnecessary windfall to the plaintiff." Stanley, 452 So.2d at 515. It would also be contrary to the public purpose of reducing health care costs to allow inflated damage recoveries to stand without reduction. We therefore conclude that defendant is entitled to have the past medical expenses awarded by the jury reducedto the extent such amounts are actually included in the past medical expenses awardedby the difference between the amounts charged by a provider and the amounts actually paid that provider by Medicare. On remand the trial court is authorized to receive such evidence as may be necessary to fix the precise amount of the reduction required by our decision today.
LIABILITY AFFIRMED; DAMAGES REVERSED.
WARNER and POLEN, JJ., concur.

ON MOTION FOR REHEARING
FARMER, C.J.
In denying motions for rehearing, we write to comment on plaintiff's post-opinion argument that the court's decision in this case would allow a setoff for collateral sources and is contrary to the statute discussed. Our opinion contributed to this misapprehension about our precise holding, so we find it necessary to make our thinking clear.
The pertinent part of our opinion said:
"The result, defendant argues, is that this difference is either inadmissible as `damages' suffered by plaintiff or that a setoff is required by section 768.76 because this is an unwarranted surplus *551 damage awarded to plaintiff. We agree."
We should have taken care to make clear that our agreement applied only to the evidentiary issue, not to any setoff argument. If this were only an issue of setoff, we might agree with plaintiff's motion for rehearing that some cases interpreting section 768.76(1) appear not to allow a setoff for this kind of Medicare benefits.[1]
In fact, however, defendant carefully raised this issue during trial as an objection to the admission of evidence of provider charges deemed satisfied by the provider's acceptance of Medicare benefits. Thus the precise objection raised by defendant, which we hold should have been sustained by the trial judge, is that a plaintiff has suffered no damage from the higher charge by the provider when it later accepts Medicare payment in full satisfaction of the charge. Our reliance on Florida Physicians Insurance Reciprocal v. Stanley, 452 So.2d 514 (Fla.1984), demonstrates that we saw this as an issue pertaining to the admission of evidence, not really as a setoff. Thus our actual holding should be understood as an evidentiary ruling. When a provider charges for medical service or products and later accepts a lesser sum in full satisfaction by Medicare, the original charge becomes irrelevant because it does not tend to prove that the claimant has suffered any loss by reason of the charge.
With that clarification, we deny all motions.
WARNER and POLEN, JJ., concur.
NOTES
[1] Allen v. United States, 164 U.S. 492, 17 S.Ct. 154, 41 L.Ed. 528 (1896).
[1] One could argue there is no conflict with Goble v. Frohman, 848 So.2d 406 (Fla. 2d DCA 2003), review granted, 865 So.2d 480 (Fla. 2004), which involved HMO benefits rather than Medicare. To the extent that HMO benefits and Medicare benefits are interchangeable for this subject, however, we certify conflict.