MAKAR, SCOTT, Associate Judge.
Luke Joerg was injured when his bicycle collided with a car driven by William Lazar. Joerg, a developmentally disabled adult, sued Lazar and State Farm Mutual Automobile Insurance Company, the uninsured motorist carrier. Because Lazar settled, the case proceeded to trial only against State Farm. Prior to trial, the trial court ruled that evidence of past medical expenses must reflect the lower Medicare reimbursement amounts because of Joerg’s participation in that program due to his disability. See Coop. Leasing, Inc. v. Johnson, 872 So.2d 956 (Fla. 2d DCA 2004). The trial court, however, did not allow State Farm to introduce evidence that Joerg’s future medical expenses could likewise be reduced under the Medicare program. State Farm appeals the judgment in favor of Joerg on a number of grounds including the award of $469,076 for future medical expenses calculated at full Medicare rates, rather than the lower reimbursement rate. It claims it was error to exclude evidence of the lower rates under the authority of Florida Physician’s Insurance Reciprocal v. Stanley, 452 So.2d 514 (Fla.1984). We agree and reverse on this issue only.
L
The issue we address is whether the jury should have been allowed to consider Joerg’s receipt of medical services under the Medicare program in determining future damages. The question, is essentially whether Joerg’s Medicare benefits are a collateral source that the jury may not consider in determining future damages. No precedent of this court or any other Florida appellate court directly and unequivocally -answers this ■ question. We therefore survey what statutory law and judicial precedents exist to guide us.
A. The Collateral Source Rule
We begin with Florida’s common law collateral source rule, which “functions as both a rule of damages and a rule of evidence.” Gormley v. GTE Prods. Corp., 587 So.2d 455, 457 (Fla.1991). At common law, the collateral source rule generally (a) disallowed the reduction of damage awards because of-collateral sources (rule of damages) and (b) did not permit the admission of evidence of collateral sources (rule of evidence).
The rule of damages and the rule of evidence servé different purposes. The former is designed to prevent tortfeasors from benefiting unjustly from the injured *854 parties’ receipt of collateral benefits for their injuries and it avoids penalizing, parties who purchase insurance, which would create a disincentive to buy coverage in the -first instance. As our supreme court stated, the rule of damages “‘rests on a concept, of justice: a tortfeasor should not benefit ,.. from an injured party’s foresight in contracting for protection against injury_Id, (quoting 3 Jerome H. Nates, et al., Damages in Tort Actions, §§ 17-5, 17-8 (1988)). The rule also maintains a level of deterrence against tortfea-sors that would be lost if awards against them were reduced by collateral sources, and the rule obviously promotes full recovery for injured parties versus some reduced or .diminished level of compensation.[1]
In contrast, the rule of evidence is based on a different policy concern. It was designed to prevent the introduction of evidence that “misleads the jury on the issue of liability and, thus, subverts the jury process. Because a jury’s fair assessment of liability is fundamental to justice, its verdict on liability must be free from doubt, based on conviction, and not a function of compromise.” Id. at 458. As the supreme court in Gormley noted, “[e]vi-denee of collateral source benefits may lead the jury to believe that the plaintiff is ‘trying to obtain a double or triple payment for'one injury”’ when they are not “or to believe that compensation received is ‘sufficient recompense.’ ” Id. (citations omittéd).'
B. Stanley
In Stanley, a minor and his parents sued for medical negligence that resulted in his “retardation and cerebral palsy.” 452 So.2d at 515. The trial court allowed the jury to consider evidence about the availability of free or low cost charitable and governmental programs that were available to assist in meeting the injured minor’s needs for physical therapy, speech therapy, and special education. Id. The jury found no liability, and the minor and his parents appealed to the First District where they prevailed. The Florida Supreme Court reversed, however, holding that “evidence of free or low cost services from governmental or charitable agencies available to anyone with specific disabilities is admissible on the issue of future damages.” Id. It concluded that “[sjuch evidence violates neither the statutory nor the common-law collateral source rule and does not, therefore, require a new trial.” Id. The supreme court noted that the then-existing predecessor to section 768.76, Florida Statutes (2007), section 768.50, Florida Statutes (1981), applied only to collateral source payments already paid; it did not apply to future damages. Id. It then stated that the “admission in this case of evidence concerning future governmental and charitable services did not violate the common-law collateral source rule” because “the common-law collateral source rule should be limited to those benefits earned in some way by the plaintiff.”[2] Id. *855 It grounded its reasoning in a ease from the Supreme Court of- Illinois (which has since been overruled). Id. at 516 (citing Peterson v. Lou Bachrodt Chevrolet Co., 76 Ill.2d 353, 29 Ill.Dec. 444, 392 N.E.2d 1, 5 (1979), overruled by Wills v. Foster, 229 Ill.2d 393, 323 Ill.Dec. 26, 892 N.E.2d 1018, 1031 (2008)).
C. The 1986 Act
The legislature’s enactment of the Tort Reform and Insurance Act of 1986 (“1986 Act”) significantly altered Florida’s law on collateral sources by, for example, modifying the rule of damages to require that certain statutorily defined collateral sources be deducted from awards for past damages.[3] The state was facing a crisis due to problems with the availability and affordability of insurance, and part of the 1986 Act’s emphasis was on avoiding double recovery by plaintiffs. See Coop. Leasing, 872 So.2d at 959-60 (noting legislative policy of preventing undue windfalls to plaintiffs in tort cases under the Act) (citing § -768.76); see also Goble v. Frohman, 901 So.2d 830, 832 (Fla.2005) (“forcing an insurer to pay for damages that have not been incurred, would result in a windfall to the injured part/’); Thyssenkrupp Elevator Corp. v. Lasky, 868 So.2d 547, 550 (Fla. 4th DCA 2003) (allowing the admission of evidence of excess charges .is “contrary to the public purpose of reducing health care, costs to allow inflated damage recoveries to stand without reduction”). The 1986 Act came on the heels of the Florida Supreme Court’s. 1984- decision in Stanley, both sharing the commonality that potentially inflated or duplicative damage awards were unjustified and counterproductive. The Act’s primary focus was to modify the common law collateral source rule to allow for statutory setoffs against past damage awards that the rule previously disallowed. These statutory changes to the rule of damages, however, contrast with the decision in Stanley, which did not involve- setoffs and whose primary focus was on the rúle of evidence, allowing the jury'to consider evidence of the plaintiffs unearned benefits from free or low cost charitable and governmental programs.
II.
A key issue in this case is whether Florida’s legislatively modified collateral source rule or any judicial decision undermines the continued .viability of Stanley. State Farm argues that the policy announced in Stanley controls this case; because Joerg’s benefits have not been earned or purchased, but rather are and will continue to be provided under the Medicare program due to his disability, they are admissible under the rule of evidence announced in *856 Stanley. Joerg counters that Stanley is inapplicable because it did not involve Medicare benefits, that Stanley does not apply to Joerg’s situation, that reductions of future damages are impermissible because Joerg’s entitlement to “those benefits is speculative,” and that Florida law does not allow reduction of future damages for Medicare benefits.
A.
We first tackle the question of whether Stanley has been judicially modified or overruled. No case has specifically done so. We note that one Florida Supreme Court case has addressed an analogous situation, though not in the context of Medicare: Allstate Insurance Co. v. Rudnick, 761 So.2d 289 (Fla.2000). In Rudnick, the plaintiff recovered past and future damages for medical benefits. The trial court deducted certain statutorily defined collateral source payments from the past damages award, but refused Allstate’s “request to set off the remaining future medical payments benefits.” Id. at 290. The supreme court held that the future medical insurance payments at issue were not to be set off against a verdict for future medical damages. The court’s analysis focused on the emphasized language of section 768.76(1), which states:
In any action to which this part applies in which liability is admitted or is determined by the trier of fact and in which damages are awarded to compensate the claimant for losses sustained, the court shall reduce the amount of such award by the total of all amounts which have been paid for the benefit of the claimant, or which are otherwise available to him, from all collateral sources; however, there shall be no reduction for collateral sources for which a subrogation or reimbursement right exists.
Rudnick, 761 So.2d at 292 n. 4. The court held that the “use of the word ‘available’ strongly suggests that the Legislature only intended to set off those benefits that have already been paid or that are presently due and owing.” Id. at 292. Confirming this conclusion, the court noted that the definition of “collateral source” in neighboring subsection (2) was defined as “any payments made to the claimant.” Id. Reading subsection (1) and (2) together, the court concluded that “the Legislature did not intend to allow a collateral source setoff for future potential benefits.” Id. at 293. Instead, the legislature’s intent underlying these subsections was directed to reductions in awards for past damages only; future damage awards were simply not affected by the statute.
In isolation, the reasoning of Rudnick might support the conclusion that awards for future damages may not be reduced for collateral sources, including Medicare. Indeed, the federal district court for the Middle District of Florida in reliance on Rudnick held that future damages are not reduced by potential Medicare payments under Florida law. See Grell v. Bank of Am. Corp., 2007 WL 1362728, at *3 (M.D.Fla. May 7, 2007) (specifically “declining] to set off potential future third party insurance or Medicare payments for future medical expenses”). The problem is that neither case accounts for Stanley. The Florida Supreme Court in Rudnick made no mention of Stanley and cannot thereby have intended to overrule or significantly alter it.[4] Grell cites Stanley as a comparative authority (“cf.”), not as a supportive one; and the supportive cases in Grell disallowed reductions of future dam *857 ages, but none involved future unearned Medicare benefits-the focus of this- case.[5]
Because Rudnick did not purport to alter Stanley, we conclude that Stanley has not been judicially overruled; its vitality endures.[6] Our conclusion is buttressed by the fact that Stanley has not been legislatively altered by the 1986 Act. Indeed, the central purpose of the 1986 Act and Stanley are in harmony: both reflect the principle that damage awards should compensate the injured party but that evidence of “unearned benefits” from charitable or governmental programs is admissible to avoid supra-compensatory damages, i.e., damages beyond the actual loss sustained. We see nothing to suggest that' the 1986 Act was intended to overturn or alter this aspect of Stanley. Indeed, portions of the 1986 Act upon which Joerg relies in this case focus on setoffs against award for past damages; in contrast, Stanley and this case focus upon awards of future damages and the admission in evidence of the availability of unearned benefits.
We have not overlooked the Medicare exclusion in section 768.76(2)(b), which- provides: “Notwithstanding any other provision of this section, benefits received under Medicare, or any other federal program providing for a Federal Government lien on or right of reimbursement from the plaintiffs recovery ... shall not be considered a collateral source.” § 768.76(2)(b) (emphasis added). Under this limited exclusion, Medicare “benefits received” are not a collateral source “for purposes of [section 768.76]” and therefore cannot be used to reduce past damages. Coop. Leasing, 872 So.2d at 960; Thyssenkrupp Elevator, 868 So.2d at 550; see also Stanley, 452 So.2d at 515. As in Rudnick, the statutory language — “benefits received” — limits the statute's application to only awards of past damages. Had the exclusion been written to apply to “benefits received or to be received under Medicare” the result would be symmetric and quite different: no reduction would be permitted against past or future damage awards. The’absence of symmetry means section 768.76(2)(b) has no application in the present case, which involves future *858 damages only. Our holding thereby dovetails with Rudnick, which limited the scope of .the statutory collateral source rule to past damages, leaving Stanley’s holding unaffected.-
B. This Case
The remaining question is whether Stanley applies to Joerg’s situation. For its part, State Farm recognizes no “red cow” case exists, but points us to Winston Towers 100 Ass’n v. De Carlo, 481 So.2d 1261, 1262 (Fla. 3d DCA 1986), which recognized that Stanley “retreated from strict application of the collateral source rule” by adopting the Illinois court’s conclusion that “no justification” existed for excluding evidence of unearned collateral sources. Id. (quoting Peterson, 29 Ill.Dec. 444, 392 N.E.2d at 5). The trial court in Winston Towers excluded from evidence the availability of Medicare benefits to a plaintiff who demonstrated he had made payment to the program via deductions from his monthly paychecks. Id. The Third District affirmed. Because the plaintiff had paid for and thereby earned the benefits, the Third District held that “[t]he collateral source rule was properly applied to exclude those benefits from the jury’s consideration of damages.” Id. Here, Joerg’s situation is the converse of the plaintiffs in Winston Towers because he has not contributed to or paid for the Medicare benefits at .issue. Under the rationale of Winston Towers, he would fall within the holding of Stanley.
Given the raison d’etre for Stanley’s holding is the Florida Supreme Court’s focus on earned versus unearned collateral sources, 452 So.2d at 515, we conclude that the trial court erred in not granting State .Farm’s motion. No record evidence shows that Joerg contributed to the financing of the Medicare program. For this reason, the program’s benefits are unearned under Stanley and not subject to. exclusion under the collateral source rule. We do not read Stanley — as Joerg urges— to exempt disabled persons from its holding because of their inability to contribute to or earn health care benefits. Instead, the court in Stanley framed the issue before it as whéther “evidence of free or low cost services from governmental or charitable agencies available to anyone ivith specific disabilities is admissible on the issue of.future damages.” Id. (emphasis added). Joerg falls within the ambit of Stanley because he is receiving free governmental services for his specific disability. While it is true that the introduction of potential future Medicare benefits 'may be speculative and prejudicial to an injured plaintiff, the supreme court’s holding in Stanley rejected this point. It was the dissenters in Stanley who argued that it was a matter of speculation whether the public assistance at issue in that casé would continue to be available and it was bad policy to force injured persons “to seek charity or public aid” and thereby reduce “the legal liability of a tortfeasor.” Id. at 517 (Shaw, J., dissenting).
Finally, the decision in Stanley is understood as involving both the rule of damages and the rule of evidence. As to the rule of damages, the Florida Supreme Court held that the benefits at issue in that case were not subject to the common law rule of exclusion because they were unearned. Id. at 515 (“Keeping such evidence from the jury may provide an undeserved . and. unnecessary windfall to the plaintiff.”). As to the rule of evidence, it specifically condoned the admission at trial of the future benefits and disagreed that “such evidence tainted the jury verdict for the defendants on liability.” Id. at 516. In doing so, the supreme court tempered its holding with this cautionary noté:
*859 This opinion should not be interpreted as limiting a plaintiff suffering from a particular continuing disability to recover only the future cost of the free or low cost governmental or charitable care available to all persons with that disability. Evidence of availability, cost, arid quality of such care is relevant to assist the jury in determining the reasonable cost of the plaintiffs future care. The jury remains free to find that the publicly available services do not meet the plaintiffs future needs. The jury may find private care at higher cost' more appropriate in some circumstances, but the jury should consider those future services available to all, regardless of wealth or status, when deciding on the proper award of future damages. The trial court did not err by allowing such consideration by the jury in this case.
Id. These admonitions apply in this case. By requiring that the trial court allow State Farm to introduce evidence of potential Medicare benefits available to Joerg in the future, we in no way suggest that a jury must do more than consider that evidence in making its award of future damages. As the court in Stanley held, the availability of services under the program (including the risk of unavailability), as well as the cost and quality of such services, are relevant to the determination of the amount of future damages. An appropriate jury instruction should be used to guide the jurors “in determining the reasonable cost of the plaintiffs future care.” Id.
III.
We are mindful of possible analytical tensions between Stanley and Rudnick, but the latter cannot be said to have sub silentio overruled the former. Instead, we conclude that the core holding of Stanley has not been legislatively altered or judicially modified. And the central purpose of both Stanley and the Tort Reform and Insurance Act of 1986 are the same, suggesting that both can coexist. For the foregoing reasons, we reverse the award of future damages and remand for proceedings consistent with this opinion. We affirm as to all other issues. .
Reversed in part; affirmed in part.
KHOUZAM, J., Concurs with opinion.
BLACK, J., Concurs.

. See Restatement (Second) of'Torts: General Principié § 901 (2012) (tort laws designed, iñ part, to deter wrongful conduct and to give compensation for harms caused); see also id. Effect of Payments Made to Injured Party § 920A, cmt. b (discussing common law col-V lateral source- rule) ("Perhaps there is an element of punishment of the wrongdoer involved. ... Perhaps also this is regarded as a means of helping to make the compensation more nearly compensatory to the injured party.”) (citations omitted).

. Wé disagree with the panel of the Fourth District that characterized this holding of Stanley as "dicta.” See Parker v. Hoppock, 695 So.2d 424, 428 (Fla. 4th DCA 1997) ("While there is dicta in Stanley that the 'common-law collateral source rule [excluding testimony about benefits received by a plaintiff] should be limited to those benefits *855 earned in some way by the plaintiff,’ the term ‘collateral sources' has never been limited to those benefits that a plaintiff has earned or paid for.") (citation and footnote pmitted). Moreover, Parker involved nonmedical “welfare benefits" (such as food stamps), id. at 427, while Stanley's narrow focus was on "physical therapy, speech therapy and special education” that the disabled youth was receiving. 452 So.2d at 515. Further, the decision in Velilla v. VIP Care Pavilion Ltd., 861 So.2d 69 (Fla. 4th DCA 2003), is inapplicable' because the only issue was past, Medicaid damages, not future ones. Id. at 71-72 (“[The] record makes clear ... that the evidence of Medicaid benefits in this case did not go to the issue of [plaintiff’s] future medical care.”).

. For background on and discussion of the 1986 Act and its application, see Robert E. Gordon & Justin Linn, Goble, Thyssenkrupp, and the Collateral Source Rule: Resolving The Ongoing Conflict, 84 Fla. B.J. 18 (Dec.2010); Benjamin J. Steinberg, Collateral Damage: Discounted Medical Bills and Conflicting Applications Of Florida Statiites § 768.76 as a Rule of Evidence, 62 Fla. L.Rev. 1431 (2010); ’ Charles C. Lemléy, Applying Florida’s Collateral Source Rule to Veterans’ Benefits, 69 Fla. B.J. 61 (Dec. 1995).

. Puryear v. State, 810 So.2d 901, 905 (Fla.2002) ("We take this opportunity to expressly state that this Court does not intentionally overrule itself sub silentio.").

. The federal court cited four cases to support its decision: Bravo v. United States, 403 F.Supp.2d 1182, 1199 n. 13 (S.D.Fla.2005) ("No set-off for future [Medicaid] payments is permitted under Florida law.”); Measom v. Rainbow Connection Preschool, Inc., 568 So.2d 123, 124 (Fla. 5th DCA 1990) (disallowing set off of unearned non-Medicare collateral source benefits against future medical expenses because section 768.76 “does not purport to benefit the tortfeasor by deducting collateral sources to which the. insured may be entitled in the future.”); White v. Westlund, 624 So.2d 1148, 1153 (Fla. 4th DCA 1993) (even if section 768.76 is applicable, "future earned disability benefits cannot be set off from an award as a collateral source under [that statute]”) (emphasis added); Swamy v. Hodges, 583 So.2d 1095, 1097 (Fla. 1st DCA 1991) (future social security benefits, which are paid for or earned by the injured . plaintiff, could not be set off against medical malpractice award).

. We note that the trial judge who heard the parties’ motions in limine initially denied Joerg’s request to preclude evidence of future Medicare benefits, holding that Stanley remains good law because no case from the Florida Supreme Court had receded from it; he also noted that the point of Stanley was “to give the jury the clear picture of what future damages are” by the admission of evidence “showing the true picture of future damages.” The same judge later reheard the matter and reversed his position, ruling that State Farm “is precluded from presenting evidence of plaintiff’s entitlement to Medicare” but may put on evidence of free services "available to all citizens regardless of their wealth or status.” The successor judge who tried the case was confused about the prior rulings, held further argument on the matter, and ultimately ruled that no evidence of future Medicare benefits was permissible.